# IN THE COURT OF APPEALS OF IOWA

No. 17-1102
Filed February 7, 2018

IN RE THE MARRIAGE OF ARMANDO SCOTT ORTIZ
AND ALISHA KAYLEEN ORTIZ

Upon the Petition of
ARMONDO SCOTT ORTIZ,
        Petitioner-Appellee,

And Concerning
ALISHA KEYLEEN ORTIZ,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Harrison County, Jeffrey L. Larson,

Judge.

        Alisha Ortiz appeals from the district court's order following a trial for

dissolution of her marriage to Armando Scott Ortiz.   **AFFIRMED AND**

**REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**

        Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for

appellant.

        Daniel Joseph Albert McGinn of McGinn, Springer & Noethe, P.L.C.,

Council Bluffs, for appellee.

        Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**DANILSON, Chief Judge.**

Alisha Ortiz appeals from the district court's order following a trial for dissolution of her marriage to Armando Scott Ortiz (Scott) and the court's corresponding custody determination regarding the parties' two children, K.O. and T.O. Alisha contends the court (1) failed to dissolve the parties' marriage, (2) should have granted Alisha physical care of the children, (3) failed to correctly change Alisha's last name, and (4) abused its discretion in denying Alisha's request for attorney fees. Both parties request appellate attorney fees. We find no error or abuse of discretion in the district court's physical-care and attorney-fees determinations, and affirm. To address the court's errors regarding the failure to address the dissolution of the marriage and Alisha's name change, we remand to the district court for entry of a nunc pro tunc order amending the decree to expressly dissolve the marriage and change Alisha's last name to "Curnyn." We deny the parties' requests for appellate attorney fees.

## I. Background Facts & Proceedings.

Scott and Alisha married on August 25, 2013, and had two children: K.O. born in 2013, and T.O born in 2014. The parties separated in early July 2016 when Alisha left the family home with the children and would not let Scott see K.O. or T.O. for approximately six weeks.

Scott was thirty-five years old at the time of trial and lives in a home that he owns in Little Sioux. Scott has two older children in addition to K.O. and T.O. Scott has joint custody of a seventeen-year-old son and full custody of a four-year-old son, M.O. Scott rarely sees his seventeen-year-old son as his son lives out of state and does not wish to travel to Iowa. Alisha served as M.O.'s primary

caregiver during the parties' marriage. Under her care, Alisha believed M.O. had severe food allergies requiring a strict diet and that he was autistic because he did not speak or interact with other children. After the parties' separation, Scott resumed full-time care of M.O. A letter from teachers in M.O.'s school district reported "educators who have worked closely with [M.O.] have recently recorded observable differences in [M.O.]'s behavior, development, and attitude as compared to the previous school year." The letter stated M.O. had begun to actively participate in school and interact with other children. Scott also had M.O. medically tested for allergies and it was determined he was only lactose intolerant, requiring a much less restrictive diet.

Scott works for J.A. King primarily as a scale technician. He stated his hours are from 8:00 a.m. to 5:00 p.m. Monday through Friday, but he is also on call and sometimes has to travel at very short notice.

Alisha stated Scott has a propensity for violence and testified about violent occurrences at trial. Alisha stated Scott raped her when she was pregnant with K.O., and was often physically violent. For example, Alisha stated Scott has thrown her into walls and left marks on her arm. Alisha also stated Scott killed the family dog out of anger.[1] Alisha offered photos of wounds on the children as exhibits at trial, including a photo of T.O. with a fat lip, a photo of T.O. with a bruise around his eye and a bruise by his temple, a photo of a scrape or burn on T.O.'s upper arm, and photos of bruises on K.O.'s arms and legs. Alisha stated the children were returned from being in Scott's care with the wounds. Alisha

---

[1] Alisha stated Scott first broke the dog's leg and then killed the dog by feeding it Alisha's pain pills and putting it in a bucket of vinegar causing the dog to suffocate.

also stated both T.O. and K.O. were returned on one occasion with yeast infections, resulting from staying in a diaper too long. A family development specialist through the Family Development and Self Sufficiency (FADSS) program[2] explained that during a visit she had with Alisha she asked T.O. about his black eye and he stated his "daddy" did it. As to the bruises on T.O.'s temple and eye and to K.O.'s body, Scott explained:

> I would have to look back at the report to see what the explanation was on that. I think at that time one of them was [T.O.] had f[allen], but I can't tell you exactly what it was. Busy raising— being a single dad full time, and kids get a lot of bruises, and I can't remember how they got every single one of them.

The department of human services completed three child-abuse assessments—two based on allegations of physical abuse due to the children's reported injuries. The assessments were determined to be unfounded.

Alisha was twenty-five years old at the time of trial and lives in Missouri Valley. At the time of trial Alisha did not have a paying job but was working as an intern and searching for full-time employment. Prior to the marriage Alisha worked for a company caring for handicapped individuals in their homes. During the parties' marriage Alisha did not work outside the home and was the primary caregiver for the children. Alisha utilized services from the Area Education Agency as well as from Learning for Life to help with the children's growth and development. Individuals working with Alisha and the children in each program testified at trial they do not have concerns with Alisha or her parenting. The individual from the Learning for Life program stated:

---

[2] FADSS is a voluntary program that provides services to families who receive the Family Investment Program grant.

> I think Alisha does a really good job. She's a really good observer of her children. When I ask her questions, she's able to answer them. You know, what do you think they will do, or how do you think they will react to, you know, something that we're doing? She is very focused on her children, . . . . She knows them well, their personalities, their struggles, that kind of thing.

However, Scott expressed concerns respecting Alisha's judgment. Scott stated that after Alisha left the family home he found conversations Alisha had had with individuals through social media. Alisha appeared to be having romantic conversations with men living in other countries in early to mid-July. Alisha spoke of going to live overseas and marrying the men. In one conversation Alisha sent a picture of a gun with the message, "Scott['s] gun, I will learn to use tomorrow, [t]o protect myself and kids . . . ." Alisha also sent pictures of the children to the men, and in one conversation continued to speak with a man who said he was, "[c]oming to usa to bring [K.O.]" back to his country.

Scott also stated Alisha had previously made suicidal threats. Scott explained he was not on time to pick the children up at an agreed-upon exchange location and Alisha "stated if she had a gun, she would have—sh[ot] herself." At the time of the trial, Alisha was pregnant with a child and stated Scott was not the father of the child.

From September 12, 2016, to the commencement of trial on April 12, 2017, the parties participated in a shared-physical-care arrangement pursuant to an order on temporary matters. Other than Alisha's complaints that Scott was often not on time to pick up or drop off the children, the parties generally testified they were able to communicate and exchange the children without incident.

Acknowledging the parties "have been able to work well within the court's temporary order," the district court ultimately held:

> Pursuant to the direction in 600B.40 of the Iowa Code [(2016)], the court has reviewed the facts of the present case in light of the factors set forth in section 598.41 in determining which custody arrangement is in the minor children's best interest. Having considered these factors and those raised during the trial, the court finds that it is in the minor child's best interest to be placed in the parent's shared physical care.
> The court finds that the minor children shall be placed in the joint legal and shared physical care of Scott and Al[i]sha.

The court also ordered the parties to pay their own attorney fees. Following entry of the court's order, Alisha filed motion pursuant to Iowa Rule of Civil Procedure 1.904(2), requesting the court amend its findings including the physical-care, attorney-fees, and name-change determinations. The court left its physical-care and attorney-fees determinations in place and ordered Alisha's name to be changed to Alisha "Kurnyn," despite Alisha's motion stating her name should be changed to Alisha "Curnyn." Alisha appeals.

## II. Standard of Review.

We review dissolution proceedings de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.* "We will disturb the court's 'ruling only when there has been a failure to do equity.'" *Id.* (citations omitted).

We review the district court's denial of attorney fees for an abuse of discretion. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). "We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable." *Id.*

**III. Analysis.**

On appeal, Alisha maintains the district court erred in (1) failing to order the dissolution of the marriage, (2) determining the parties will have shared physical care of the children, (3) failing to properly change Alisha's name, and (4) failing to grant Alisha's request for attorney fees.

*(1) Failure to Dissolve the Marriage.* In its order, the district court found, "The material allegations of Scott's petition are supported by competent evidence, and the court should enter an order dissolving the marriage, . . ." However, the court failed to actually order the dissolution of the parties' marriage. Neither party disputes that the marriage should be dissolved. On our review of the record, we find there is substantial evidence of a breakdown in the marriage warranting dissolution of the parties' marriage. *See* Iowa Code § 598.17(1). We find the court's failure to expressly order the dissolution of the marriage was due to inadvertence. We therefore remand to the district court for the purpose of entering a nunc pro tunc order to amend the decree and expressly provide for a dissolution of the marriage.

*(2) Physical Care.* Alisha asserts the district court used the improper analysis when reaching its physical-care determination. Alisha contends consideration of the factors enumerated in Iowa Code section 598.41 "is relevant in considering what *custody* arrangement is in the best interests of the minor children if the parents do not agree to joint legal custody." Citing section 598.41(4), Alisha argues, because the parties agreed to joint legal custody, the

section 598.41 factors do not apply. Certainly the section 598.41(3)[3] factors are relevant considerations when determining if a shared-physical-care arrangement is in the best interests of the parties where the parties have not agreed to joint physical care. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) ("In Iowa, the basic framework for determining the best interest of the child has long been in place. In the context of *custody decisions*, the legislature has established a nonexclusive list of factors to be considered. . . . Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interests of the child.") (citations omitted).

Additionally, citing *Hansen*, Alisha contends a determination of whether or not joint physical care is in the children's best interest can only be made after the

---

[3] The factors include:

> (a) Whether each parent would be a suitable custodian for the child.
> (b) Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> (c) Whether the parents can communicate with each other regarding the child's needs.
> (d) Whether both parents have actively cared for the child before and since the separation.
> (e) Whether each parent can support the other parent's relationship with the child.
> (f) Whether the custody arrangement is in accord with the child's wishes . . . .
> (g) Whether one or both the parents agree or are opposed to joint custody.
> (h) The geographic proximity of the parents.
> (i) Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody . . . .
> (j) Whether a history of domestic abuse, as defined in section 236.2, exists.
> . . . .

Iowa Code § 598.41(3).

determination there are two suitable parents. The court in *Hansen* stated, "In considering whether to award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors." 733 N.W.2d at 696. We agree joint physical care would not be in the best interest of the children where one parent cannot provide suitable care. In addition to suitability, stability, and continuity of caregiving, we consider whether "one spouse has been the primary caregiver," "the ability of spouses to communicate and show mutual respect," "the degree of conflict between [the] parents," and "the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 698-99.

Using this analysis, and upon our de novo review, we determine joint physical care is in K.O. and T.O.'s best interest.

Although both parties express concern respecting the ability of the other party to parent the children safely, they have been able to work together reasonably well under the temporary shared-care arrangement. Despite Alisha's reports of physical abuse by Scott, each child-abuse assessment completed was determined to be unfounded. Alisha's allegations of abuse toward her and the children are troubling, to say the least, because a history of domestic abuse or the likelihood of direct physical harm or significant emotional harm to the children may outweigh any other factor. *See* Iowa Code § 598.41(1)(a) (stating the court shall "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents . . . unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result"); *see also* § 598.41(1)(b) (providing that if there is a history of domestic abuse "a

rebuttable presumption against the awarding of joint custody exists"). Here, the district court did not find a history of domestic abuse, and we agree the record is not sufficient to reach that conclusion. Although we are concerned about the well-being of the children, we, like the district court, rely upon the fact that three investigations by the department of human services proved to be unfounded.

To her credit, Alisha has been the historic primary caregiver to the children, but Scott has shown an ability to successfully parent by his care of M.O. full-time. M.O. is improving in his development under Scott's care after previously being cared for by Alisha. Alisha has shown some instability in her mental state—she made a threat to shoot herself—but the record does not indicate Alisha continues to struggle with suicidal thoughts. Service providers working in the home with Alisha and the children testified Alisha exhibits a strong bond with the children and an ability to parent them appropriately.

The denial of visitation by one parent to the other parent may also constitute a significant factor in physical-care determinations. *See* Iowa Code § 598.41(1)(c). Yet, other than the six-week period when Alisha first left the family home, she has not denied Scott time with the children, and has even provided exceptions to the shared-care schedule to allow the children time with Scott's extended family. We do have concerns about awarding Alisha sole physical care in light of her sharing photos of a gun and the children to men from other countries. Apparently these communications have ceased and Alisha assures that she will no longer act upon her words expressed on social media platforms. We note any removal of the children from Scott's vicinity would adversely affect his contact with the children.

There is also no evidence in the record that either party's home is unsuitable for the children. Scott and Alisha live about twenty-five minutes apart—and within the same school district—allowing for a continued shared-care arrangement.[4] Both parties agree to allow the children to be exposed to the other's religion and to permit the children to decide what religion they wish to practice when they are of an appropriate age. The children's best interest will be served by allowing maximum time with each parent. *See* Iowa Code § 598.41(1)(a) ("The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, . . .").

Upon our de novo review, we affirm the district court's determination the parties will share physical care of the children.

(*3) Name Change.* Alisha also appeals the district court's mistake in changing her last name to "Kurnyn" rather than "Curnyn" as requested. We find this is also due to the inadvertence or oversight of the district court. We accordingly remand for entry of a nunc pro tunc order amending the decree to change Alisha's last name to "Curnyn."

(*4) Attorney Fees.* Alisha also challenges the district court's determination that both parties will pay their own attorney fees. "Whether

---

[4] At the time of trial, Alisha stated she wishes to move to Council Bluffs or Omaha in the future, which would result in about a forty-five minute commute between the parties. However, she was still living in Missouri Valley, and we will not speculate here on possible events.

attorney fees should be awarded depends on the respective abilities of the parties to pay." *Kimbro*, 826 N.W.2d at 704 (citation omitted). "To determine the ability to pay, we review the parties' entire financial picture, 'including their respective earnings, living expenses, and liabilities.'" *Id.* (citation omitted).

Although Alisha was not earning an income at the time of trial, the record reflected she is qualified for employment, and Alisha stated she intended to obtain a paying job in the near future. After determination of the assets and debts belonging to each party, the district court ordered an equalization payment of $15,938.50 to be paid by Scott to Alisha. On consideration of Alisha's ability to earn an income, the allocation of assets and debt, and the equalization payment, the district court did not abuse its discretion in ordering each party to pay their respective attorney fees and we affirm.

(*5*) *Appellate Attorney Fees.* Both parties also request appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.*

Weighing Scott's greater ability to pay attorney fees and Alisha's primarily unsuccessful appeal, we find appellate attorney fees are not warranted in this case.

**IV. Conclusion.**

We conclude shared physical care is in the children's best interest, and we affirm on that ground. We also find the district court did not abuse its discretion in ordering each party to pay their attorney fees and affirm. We do, however, find the district court inadvertently failed to expressly order the dissolution of the marriage and to properly change Alisha's last name to "Curnyn" as requested. We therefore remand to the district court for entry of a nunc pro tunc order amending the dissolution decree to expressly dissolve the marriage and change Alisha's last name to "Curnyn." We deny the parties' request for appellate attorney fees. Costs are equally assessed against the parties.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**