**IN THE COURT OF APPEALS OF IOWA**

No. 20-1023
Filed July 21, 2021

**SARAH HYATT,**
        Petitioner-Appellant,

**vs.**

**MARION CIVIL SERVICE COMMISSION,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Chad A. Kepros, Judge.


        Sarah Hyatt appeals a district court ruling upholding a civil service commission's ruling affirming the termination of Hyatt's employment.  **AFFIRMED.**


        William H. Roemerman of Elderkin & Pirine, P.L.C., Cedar Rapids, for appellant.

        Holly A. Corkery of Lynch Dallas, P.C., Cedar Rapids, for appellee.


        Heard by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The Marion Police Department terminated Sarah Hyatt's employment as a dispatcher. The Marion Civil Service Commission (the Commission) affirmed the termination. The district court upheld the Commission's ruling. Hyatt now asks this court to reinstate her employment.

Following our independent review of the record as a whole, we conclude Hyatt's termination was appropriate. We affirm.

**I. Background Facts and Prior Proceedings**

On Friday, February 22, 2019, Hyatt worked a double shift from 6:00 a.m. to 10:00 p.m. as an emergency services operator. While on duty, Hyatt began to experience leg pain. So, around 12:15 p.m., her husband brought her CBD tincture oil, which Hyatt had purchased online. He passed it to Hyatt in the police department lobby. Hyatt then used the CBD oil in front of other employees. Then she went back to work.

At some point that day, Hyatt went to take a break.[1] At that time, she said she was going to take a nap, walked into her supervisor's office, and closed the door. Hyatt "laid down and put a coat over" her face. She was in the office for ten to fifteen minutes. When she emerged, she seemed confused; asked about how long she was in the office; and commented about forgetting to set an alarm. About ten minutes later, she commented that "she felt refreshed, she felt better."

The following Monday, February 25, Officer Amanda Clark observed Hyatt consume oil from a dropper bottle. Officer Clark believed it was the same as the

---

[1] Dispatch operators get two fifteen-minute breaks per shift.

CBD tincture bottle. Also, Hyatt told Officer Clark "she went into [her supervisor]'s office and took a nap" during her Friday shift.

Rhonda Kaczinski was Hyatt's supervisor. On February 27, Kaczinski became aware that Hyatt may have possessed CBD oil at work. On March 1, Kaczinski confronted Hyatt about it. Hyatt responded by questioning, "Oh the CBD oil?" Hyatt did not mention any other oils, such as essential oils, at that time.

Hyatt and Kaczinski went to talk to Sergeant Jeff Hartwig. Sergeant Hartwig told Hyatt she would be placed on paid administrative leave while he investigated claims against her. Kaczinski and Sergeant Hartwig then followed Hyatt home and collected the bottle of CBD tincture oil.

Sergeant Hartwig completed his investigation and found the CBD tincture oil contained cannabinol and THC. As part of his investigation, he also asked Hyatt whether she ever slept at work. Hyatt responded that she didn't know how to answer the question because she did go into Kaczinski's office and lain on the floor but she wasn't sure if she slept or not. Sergeant Hartwig summarized his findings and sent them to Kaczinski and Police Chief Joseph McHale.

Hyatt received a notice of a due process hearing along with a personnel incident report. The report stated Hyatt violated several policies including, "City of Marion Drug Free Work Policy 7.02, section 3"; "Marion Police Department Rule #333, Alcoholic beverages and drugs in Police Facility"; "Marion Police Department Rule #334, Possession and use of Drugs"; "Marion Police Department Rule #335 Sleeping on Duty"; "Marion Police Department Rule #305, Neglect of Duty"; and "Marion Police Department Rule #306, Truthfulness."

Kaczinski and Chief McHale met with Hyatt and union president, Officer Nick Martens, at the due process meeting on March 14. Following the meeting, Kaczinski and Chief McHale agreed termination was appropriate. Hyatt was terminated the same day.

Hyatt appealed to the Commission. Following a hearing, the Commission upheld Hyatt's termination in a written ruling. The Commission concluded the CBD tincture oil contained THC—and THC is a controlled substance. The Commission also determined Hyatt slept while on break on February 22 and left a trainee unsupervised, which violated departmental rules #335 (sleeping on duty) and #305 (neglect of duty). Finally, the Commission determined "Hyatt was not forth right and truthful when she was interviewed during her internal affairs investigation" and violated departmental rule #306 (truthfulness).

Hyatt appealed to the district court, which upheld the Commission's ruling. She now appeals to this court. We will discuss additional facts as necessary.

## II. Standard of Review

Iowa Code section 400.27(3) (2019) permits a civil service employee to seek judicial review of a civil service commission in district court. "The scope of review for the appeal shall be limited to de novo appellate review without a trial or additional evidence." Iowa Code § 400.27(3). Because the district court's review does not involve a trial or hearing additional evidence, we do not give weight to the factual findings made by the district court. *Milligan v. Ottumwa Civil Serv. Comm'n*, No. 18-1810, 2019 WL 5792655, at *5 (Iowa Ct. App. Nov. 6, 2019). Rather, "we apply the 'de novo' standard that requires us to give weight to the findings of the

commission, to review whether the sanction was warranted and restricts us to the record made at the commission level." *Id.*

**III. Discussion**

*A. Whether CBD Tincture Oil is a Controlled Substance in Iowa*

Hyatt first quarrels with the standard of review applied by the district court. She contends the district court improperly deferred to the Commission's legal findings. Hyatt claims the district court failed to complete an independent legal analysis as to whether the CBD tincture oil qualified as a controlled substance under the Iowa Code as enacted at the time Hyatt possessed the oil. Instead, the district court relied on (1) a statement made by the Iowa Attorney General regarding whether a substance with any amount of THC qualifies as a controlled substance and (2) the Commission's reliance on the Attorney General's statement.

But we need not decide whether the district court's approach was correct. Rather, as Hyatt recognizes, we must conduct our own legal analysis to determine whether the Iowa Code classified the CBD tincture oil as a controlled substance. We "review questions of statutory interpretation for correction of legal error." *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

Here the focus is Iowa Code chapter 124, titled "Controlled Substances." Hyatt draws our attention to section 124.101(20), which defines "[m]arijuana" as

> all parts of the plants of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols [(THC)]. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the

resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.

Hyatt acknowledges that, according to its label, her CBD tincture oil contains "hemp oil." And Hyatt further acknowledges hemp is "a plant of the genus Cannibis." But Hyatt claims hemp oil is generally understood to mean oil pressed from the Cannibis plant's seeds. And section 124.101(20)'s definition of "marijuana" expressly excludes "oil . . . made from the seeds of the" Cannabis "plant." So, Hyatt contends, her CBD tincture oil could not have been "marijuana." Therefore, in Hyatt's view, the oil could not have constituted a "controlled substance" even if it contained THC.

We disagree. Section 124.101(5) defines "controlled substance" to include all of the substances identified in "schedules I through V." Schedule I appears in section 124.204. *See also* Iowa Code § 124.202. It is essentially a long list of controlled substances. "Marijuana" is one of them. It is named in paragraph 124.204(4)(m). But THC is also named in a separate subparagraph. Specifically, subparagraph 124.204(4)(u)(1) makes THC a schedule I "controlled substance" regardless of whether it is "naturally contained in a plant of the genus Cannibis (Cannibis plant)" or a "synthetic equivalent."[2] And subsection 124.204(4) clarifies that any mixture that contains "*any* quantity of" THC qualifies as a "controlled substance." (Emphasis added.)

---

[2] This section was amended shortly thereafter to exempt products containing less than 0.3% THC. *See* 2019 Iowa Acts ch. 130, §§ 22, 23. This subsequent change in the Code supports our conclusion that a product containing any amount of THC prior to the amendment amounted to a schedule I controlled substance.

Following our de novo review, we conclude Hyatt's CBD tincture oil contained THC.[3]  It was, therefore, a controlled substance under Iowa law.[4]  So the commission committed no legal error in determining the CBD tincture oil was a controlled substance.

*B. Whether Termination Was Warranted*

We turn next to the central question in this appeal: Was Hyatt's termination appropriate?  Before reaching that issue, however, we note Hyatt's concerns about the district court's approach to this question.  Hyatt claims the district court paid too much deference to the Commission's findings of fact.

As with the legal issues surrounding CBD oil, however, we need not decide whether the district court's approach was correct.  Instead, our task is to conduct a de novo review and determine for ourselves whether termination was appropriate.  *See Milligan*, 2019 WL 5792655, at *5.  This includes "an independent evaluation of the totality of the circumstances as shown by the entire record."  *State v. Salcedo*, 935 N.W.2d 572, 577 (Iowa 2019) (citation omitted).  We give deference to the factual findings of the Commission, but we are not bound by them.

---

[3] The manufacture's website stated its products contain THC and any product without THC would be labeled as such.  The CBD tincture oil had no such label.  And Hyatt conceded that the CBD tincture oil contained some amount of THC.

[4] We note Hyatt's argument that because oil made from Cannibis seeds is not "marijuana" for purposes of section 124.101(20), THC derived from Cannibis seeds is not THC for purposes of section 124.404(4)(u)(1).  We disagree.  By its plain terms, section 124.404(4)(u)(1) encompasses all THC derived from the "Cannibis plant."  Seeds are parts of plants.  *See Seed*, https://www.dictionary.com/browse/seed (last visited June 24, 2021) (defining "seed" as "the fertilized, matured ovule of a flowering plant, containing an embryo or rudimentary plant" and "any propagative part of a plant, including tubers, bulbs, etc., especially as preserved for growing a new crop").  So section 124.404(4)(u)(1) encompasses THC derived from Cannibis seeds.

*See Milligan*, 2019 WL 5792655, at \*5; *see, e.g.*, *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015) (noting we give deference to the fact finder's factual findings but "are not bound by those findings" (citation omitted)); *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (same); *State v. Lambert*, No. 12-0311, 2012 WL 4901517, at \*1 (Iowa Ct. App. Oct. 17, 2012) (recognizing that we defer to the fact finder's factual findings "because of its greater ability to evaluate the credibility of witnesses" though we are not bound by them); *State v. Whitson*, No. 10-1284, 2011 WL 3925698, at \*2 (Iowa Ct. App. Sept. 8, 2011) ("We defer to the factual findings of the [fact finder], but are not bound by them.").

Our review is governed by Iowa Code section 400.18(1), which provides:

> A person holding civil service rights as provided in this chapter shall not be removed, discharged, demoted, or suspended arbitrarily, but may be removed, discharged, demoted, or suspended due to any act or failure to act by the employee that is in contravention of law, city policies, or standard operating procedures, or that in the judgment of the person having the appointing power as provided in this chapter, or the chief of police or chief of the fire department, is sufficient to show that the employee is unsuitable or unfit for employment.

So Hyatt could not be terminated for an arbitrary reason. But she could be terminated "due to any act or failure to act by the employee that is in contravention of law, city policies, or standard operating procedures" or if, in Chief McHale's judgment, she was unsuitable or unfit for employment. *See* Iowa Code § 400.18(1).

Here, Hyatt was terminated for possessing and consuming the CBD tincture oil at work, sleeping while on break, and being untruthful during the investigation. Following our de novo review, with appropriate deference to the Commission's

factual findings, we conclude Hyatt was not terminated arbitrarily. Instead, we find Hyatt's conduct violated Iowa law and the department policies.

By her own admission, Hyatt possessed and consumed the CBD tincture oil at work. As an excuse, she claims ignorance of its status as a controlled substance. But her subjective understanding is immaterial to its legal status as a controlled substance. Her use and possession violated the City of Marion Drug Free Work Policy 7.02, section 3, which prohibits "possession or use of a controlled substance on the employer's premises." Also, Marion Police Department Rule #333 prohibits employees from storing or bringing controlled substances into the police facility "except those that are held as evidence." And Marion Police Department Rule #334 prohibits use or possession of any controlled substance unless prescribed by a physician or dentist and requires the employee to notify their commander if the controlled substance is prescribed. When Hyatt possessed and used the CBD tincture oil at work, she violated all of these rules.

Hyatt denies sleeping at work. But the commission found the contrary evidence compelling. So do we. Hyatt proclaimed she was going to nap on her break. She went into an office with the lights off and closed the door. She covered her eyes. According to a witness, she was groggy when she came out of the office. Then she noted she felt refreshed. Hyatt claims she was not in the office long enough to fall asleep and notes she could hear the radio traffic while in the office. But a few days later, and before she had motivation to claim she did not sleep, she told a coworker that "she went into Rhonda's office and took a nap" during her recent shift. While no one actually observed Hyatt sleeping (because she was in an office with the door closed), the evidence leads us to conclude she slept. This

violated Marion Police Department Rule #335, which requires employees to "remain awake while on duty" and to report their inability to stay awake to a commanding officer.[5]

Finally, although Hyatt takes issue with the Commission's finding that she was not truthful during this investigation, we conclude the Commission was correct. Hyatt slept at work and then denied it. She was also untruthful about how many times she used CBD oil. Hyatt notes the Commission found she used the CBD tincture oil three times because coworkers saw her use something in a bottle dropper consistent with the CBD tincture oil three times (on February 22, 25, and 28). According to Hyatt, on two of those occasions (February 25 and 28) she actually used essential oils, not CBD oil. Witnesses were just confused about what they saw, Hyatt claims. But a trainee saw Hyatt use a bottle dropper later and heard Hyatt talk to someone about CBD oil at that time. And when Kaczinski confronted Hyatt, Hyatt never mentioned using essential oils; instead she responded "Oh the CBD oil?" Nor had Hyatt's coworkers ever noticed her use anything like essential oils before her admitted use of the CBD tincture oil. So we find the reports of Hyatt's later use of the CBD tincture oil to be credible.

Because Hyatt was untruthful when she denied sleeping at work and using the CBD tincture oil multiple times, we conclude she violated Marion Police Department Rule #306. This rule prohibits employees from "depart[ing] from the truth in giving testimony, or in connection with any legal official order received by them, or in any of their official duties."

---

[5] The parties appear to agree this rule prohibits sleeping even when an employee is on break. We follow their lead.

Despite these violations, Hyatt contends the Commission incorrectly found her termination warranted.[6]  In considering this claim, we have "*independently* construe[d] the factual record as a whole to determine if [Hyatt]'s discipline was warranted."  *Civil Serv. Comm'n of Coralville v. Johnson*, 653 N.W.2d 533, 537 (Iowa 2002) (citation omitted).

Hyatt notes that others have slept on the job and were not terminated.  But Hyatt did not *merely* sleep on the job.  She also possessed and used a controlled substance at work, a serious breach of city and departmental policy.  And Hyatt was also untruthful during the investigation.  We have previously stated, "Termination, while harsh, is appropriate discipline for dishonesty in an internal investigation."  *Milligan*, 2019 WL 5792655, at *8.  This rings true here as well.[7]  Considering all of Hyatt's transgressions and "the factual record as a whole," we conclude her termination was appropriate.[8]  *Johnson*, 653 N.W.2d at 537.

**IV. Conclusion**

Under the Iowa Code in force at the time of these events, the CBD tincture oil was a controlled substance.  Because Hyatt possessed and used the CBD tincture oil at work, slept on the job, and was untruthful in the following

---

[6] Hyatt claims the district court erred by failing to independently consider whether her termination was warranted under the facts.  But regardless of how the district court approached the issue, Hyatt agrees we are free to make our own independent determination.  We have done so.

[7] At oral argument, Hyatt conceded that termination is an appropriate response to dishonesty.

[8] Even if the CBD Tincture oil did not qualify as a controlled substance, we still conclude Hyatt's sleeping on the job and dishonesty during the investigation would warrant termination.

investigation, she violated several city and departmental policies.  Her termination was appropriate.

**AFFIRMED.**