# IN THE COURT OF APPEALS OF IOWA

No. 23-0805
Filed August 7, 2024

**IN RE THE MARRIAGE OF BENJAMIN MICHAEL RASMUSSEN AND ALEXIS MICHELLE RASMUSSEN**

**Upon the Petition of**
**BENJAMIN MICHAEL RASMUSSEN,**
    Petitioner-Appellant,

**And Concerning**
**ALEXIS MICHELLE RASMUSSEN,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

A petitioner appeals the property division of a decree dissolving the parties'

marriage. **AFFIRMED AS MODIFIED.**

Jaclyn M. Zimmerman of Miller, Zimmerman & Evans P.L.C., Des Moines,

for appellant.

Andrew B. Howie and James R. Hinchliff of Shindler, Anderson, Goplerud

& Weese, P.C., West Des Moines, for appellee.

Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

Ben Rasmussen appeals the property division in the decree dissolving his three-year marriage with Alexis Rasmussen. He does not challenge that the district court's division left Alexis with a net worth of more than $400,000 and him with a negative net worth of about $20,000 in debt. Rather, he argues only that it is inequitable for the district court to also order him to pay another $20,000 to Alexis for her "lost equity" in a Mercedes Benz that she transferred to him during the marriage and the court awarded to him in the property division.

We agree. Alexis's "lost equity" is not an asset or debt subject to division. Nor could a $20,000 payment that makes the property division less equal be an equalization payment. And so, on our de novo review, we modify the property division to strike Ben's $20,000 payment obligation to Alexis and otherwise affirm.

## I.      Background Facts and Proceedings

Ben and Alexis married in November 2019 after living together for some period before that. They have no children together. But Alexis has a son from another relationship who was also living with them.

The parties entered their marriage in vastly different financial circumstances. Alexis was well off—owning, among other assets, multiple luxury vehicles, a house, and a profitable business. Ben owned little and was in such serious debt that he considered declaring bankruptcy.

Even before the parties were married, Alexis began letting Ben drive one of her vehicles—a 2017 Mercedes-Benz sports utility vehicle. Alexis later transferred the Mercedes-Benz—at that time, worth $39,000—to Ben. In return, Ben paid off

her loan of about $24,000 by taking out a new loan on the Mercedes-Benz for $38,000, the excess of which was used to pay off some credit card debts.

When Alexis bought a new vehicle for herself, she traded in Ben's pre-marital vehicle—on which he owed $18,000 more than it was worth—and rolled the negative equity into the new loan. During the marriage, Alexis also helped pay off at least $3000 of Ben's credit card debt. She explained she wanted to help Ben get out of debt to improve their collective financial future.

Alexis owned the marital home—as she had before the marriage—and was solely responsible for its mortgage. She also spent $71,000 for improvements to the home, including an outdoor pool. Ben contributed no money and negligible labor to the improvements. The home improvement and general market conditions boosted the value of the house during the three years of their marriage.

Other than a joint bank account that they tried using for only a short time, the parties kept their assets separate during the marriage. Alexis paid for most of the family's household expenses. But Ben contributed at least some financial support to the household, though the precise amount is disputed.

Both parties are middle-aged and appear to be in fine health. Both are reasonably educated and have significant earning capacities. But each has had some recent employment challenges, with Ben losing one of his jobs and Alexis's design-and-photography business struggling since the pandemic.

The parties separated in March 2022. And the next month, Ben petitioned to dissolve their marriage. After a one-day bench trial—at which the main dispute was the division of the parties' property—the district court issued the dissolution decree in February 2023. The court divided the property mainly by awarding each

party the assets and debts they held in their own name. This included awarding the parties' largest asset and debt—the marital home, valued by the court at $500,000, and its roughly $218,000 mortgage—to Alexis. In total, the court awarded property and debts to Alexis giving her a net worth of more than $400,000. And the award left Ben with a negative net worth of about $20,000.

The court rejected Ben's request that the court order Alexis to pay him a $50,700 equalization payment to give him a portion of the value of the marital home, reasoning that his "contributions were not significant" and "[t]he vast majority of contributions to the home equity and value were made by Alexis and her family." Instead, the court agreed with Alexis and ordered Ben to pay her $20,000 "for the lost equity Alexis had in the 2017 Mercedes Benz due to the transfer of that vehicle to Ben." The court reasoned that "[a]lthough Ben took over the loan payment on that vehicle, he provided no equity up front covering the actual value of the vehicle at the time of the transfer."

Ben moved to reconsider the $20,000 payment under Iowa Rule of Civil Procedure 1.904(2). The court summarily denied it. And Ben now appeals.

## II. Division of Property

We review the district court's division of property in a dissolution decree de novo. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). Though we are not bound by the trial court's fact findings, we accord them weight. *See id.* And we will only modify the district court's division on appeal "when there has been a failure to do equity." *Id.* (cleaned up).

In a dissolution decree, "[t]he court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties."

Iowa Code § 598.21(5) (2022); *see also In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013) ("Iowa is an equitable distribution state."). Dividing property equitably requires a consideration of the facts of each case and the factors in Iowa Code section 598.21(5). *See McDermott*, 827 N.W.2d at 682. While an equal division is often equitable, "the division need not be equal in most short-term marriages. Rather, it is often equitable to simply award the property to the party that brought it into the marriage." *In re Marriage of Hansen*, 886 N.W.2d 868, 873 (Iowa Ct. App. 2016); *see also* Iowa Code § 598.21(5)(a), (b) (requiring consideration of "[t]he length of the marriage" and "[t]he property brought to the marriage by each party").

Along with awarding property and debts to each party, as a part of the division, a court may order an equalization payment from one party to the other to achieve an equal division that would otherwise be impractical. *See McDermott*, 827 N.W.2d at 683 ("An equalization payment is preferable when the court cannot divide an asset easily and there are not enough liquid assets in the marital estate to achieve an equitable distribution.") An equalization payment—as one would expect from its name—"suggests each party should be awarded an equal amount of assets and liabilities." *Hansen*, 886 N.W.2d at 873. But equalization payments will typically be inequitable in short-term marriages. *See id.* And we know of no Iowa precedent authorizing an equalization payment that has the effect of making the property division *less* equal.

Ben's challenge to the property division on appeal is narrow. He argues that the order to pay Alexis $20,000 for her lost equity in the Mercedes-Benz is

inequitable because "lost equity is not an asset or debt in existence at the time of dissolution and therefore should not be subject to distribution."

Alexis offers no responsive argument. Rather, she focuses nearly all her brief defending the district court's decision to not order her to pay an equalization payment—a challenge Ben does not pursue on appeal. Her only defense of the $20,000 payment is that "the district court correctly found that Benjamin owed Alexis $20,000 in equity associated with the awarding of the [Mercedes-Benz] to him" because the "court correctly found that the 'payoff of Ben's debts placed Ben in a better financial position than before the parties' marriage.'"

We agree with Ben that the $20,000 payment is inequitable. Of course, the court could consider the fact that Alexis brought the Mercedes-Benz into the marriage with significant equity and the relative contributions of the parties to the marriage when deciding on the equitable division of their property—both the overall split and the awards of particular assets and debts to each party. *See* Iowa Code § 598.21(5)(b), (c). *But see In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007) ("It is important to remember marriage does not come with a ledger."). Yet when dividing the marital property, the court can only award assets and debts that then exist, and it must generally do so based on their value at the time of trial. *See In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997).

So here, the court could properly decide to award the Mercedes-Benz— valued at about $26,000—and the $26,000 loan secured by it to one of the parties. And the court did so, awarding both to Ben. No party challenges that award. Nor does either challenge the overall unequal split: Ben entered the marriage in debt and leaves it in debt; Alexis entered the marriage wealthy and leaves it wealthy.

Still, the district court reasoned that Ben should also be assigned responsibility for value that Alexis had in the Mercedes-Benz when she transferred it to him during the marriage. But this "lost equity," as the court termed it, was not property in existence at the time of trial that could be awarded. And the payment could not be considered an equalization payment because it does not equalize the property division—it makes the division less equal. Thus, the court's order for Ben to pay Alexis $20,000 for her lost equity in the Mercedes-Benz is inequitable and must be removed from the decree.

Ben makes no other challenge to the property division on appeal. And Alexis did not cross-appeal. So we could not grant either any further relief. We thus do not attempt a comprehensive review of the district court's division of assets and debts and otherwise affirm the decree.

### III.    Appellate Attorney Fees

Alexis requests that we order Ben to pay her appellate attorney fees. In dissolution cases, appellate attorney fees are not awarded as "a matter of right, but rather rest in [our] discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (cleaned up). In exercising that discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). We exercise our discretion to deny Alexis's request for appellate attorney fees. Considering the relative financial circumstances of the parties and Ben's success on the merits, it is appropriate for each party to pay their own attorney fees as they did in the district court. Costs shall be assessed to Alexis.

### AFFIRMED AS MODIFIED.