# IN THE COURT OF APPEALS OF IOWA

No. 18-0196
Filed December 5, 2018

IN RE THE MARRIAGE OF EMILY ROCKSVOLD
AND ANDREW ORVELLA

Upon the Petition of
**EMILY ROCKSVOLD,**
    Petitioner-Appellant,

**And Concerning**
**ANDREW ORVELLA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Winneshiek County, John J. Bauercamper, Judge.

Emily Rocksvold appeals, and Andrew Orvella cross-appeals, from the decree dissolving their marriage. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Erik W. Fern of Berry Law Firm, Decorah, for appellant.

Crystal L. Usher of Nazette, Marner, Nathanson & Shea, LLP, Cedar Rapids, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

Parties to a divorce decree appeal and cross-appeal from the property distribution, spousal support, custody, visitation, and attorney-fee provisions of the decree.

## I.    *Background Facts and Proceedings*

Emily Rocksvold and Andrew Orvella married in 2011 and divorced in 2017. They had one child, born in 2012.

Rocksvold was thirty-nine years old at the time of trial. She obtained a Bachelor of Science degree in geology and held various jobs over the years. When she met Orvella, she was working for an environmental and geotechnical consulting and engineering firm in Minnesota as an environmental scientist. She earned $48,000 a year "plus quarterly bonuses based on billable hours." The position carried health and retirement benefits. Shortly before her marriage to Orvella, Rocksvold resigned her position. In a letter of resignation, she stated her decision was precipitated in part by her wish to better support Orvella and his 2000-acre farming operation. She testified to Orvella's assurances that he would be able to support her, as well as her child from another relationship, on his income of approximately $150,000 annually.

Following the marriage, Rocksvold worked briefly in her field. At the time of trial, she was employed as a substitute para-educator in two local school systems.

Orvella graduated from high school in 2004 and attended a college of business for one year. After that point, he began farming with his father. He entered the cattle business for a year but returned to crop farming. At the time of trial, he worked as a truck driver.

Rocksvold filed the dissolution petition in 2015. Until the filing, she served as primary caretaker of the child. After the filing, the district court granted the parents temporary joint physical care of the child. The court also ordered Orvella to pay temporary spousal support of $700 per month as well as child support.

Two-and-a-half years elapsed between Rocksvold's filing of the petition and trial. During that period, Rocksvold filed several motions to compel disclosure of Orvella's income and assets. Some were resolved by agreement and others were granted by the court.

Following trial, the district court divided the parties' assets and liabilities but declined to award Rocksvold a cash equalization payment. The court also declined to award her spousal support. The court granted Rocksvold physical care of the child and ordered visitation with Orvella. Orvella was ordered to pay $1500 towards Rocksvold's trial attorney fees.

## II.     Cash Equalization Payment

Rocksvold contends the district court acted inequitably in declining to grant her a cash equalization payment. She seeks $200,000, payable in annual $50,000 increments. She grounds the request on Orvella's transfer and removal of assets following her filing of the dissolution petition and his failure to fully disclose his assets.

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). "The dissipation doctrine applies when a spouse's conduct during the period of separation 'results in the loss or disposal

of property otherwise subject to division at the time of divorce.'" *Id.* at 700–01 (citation omitted).

Rocksvold established that Orvella dissipated assets. A certified public accountant she retained as an expert witness prepared a report finding that Orvella reported "a $499,362 reduction in net worth" during a period after Rocksvold filed her petition. The expert opined that the reduction did "not appear reasonable since there were no reported losses from sales of fixed assets and/or any other evidence of an 'event' which would cause such a substantial decrease in net worth over such a short period of time." The expert cited several instances of underreported assets.

At trial, the expert first noted issues with Orvella's cash flow. He stated there was "something significantly wrong with the numbers that were reported on Mr. Orvella's 2015 tax return." Specifically, he failed to report "approximately $350,000 of income." As for Orvella's net worth, the expert reaffirmed his earlier conclusion that Orvella's reduction in net equity occurred after Rocksvold filed her dissolution petition. When asked if "it appear[ed] that" Orvella had "inaccurately reported his financial condition," the expert responded, "I think I can go farther than saying . . . it appears. Mr. Orvella, in my opinion, has definitely misstated his financial position." He testified he was "[v]ery confident" in his conclusion.

The district court found "the appraisal method and conclusions of [Rocksvold's] expert to be the most credible evidence on financial issues." We give weight to this finding. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We also give weight to the court's finding that Orvella lacked "credibility regarding many of his financial transactions." *Id.* Based on these findings, we conclude Roksvold was entitled to a cash property settlement.

5

We turn to the amount. Rocksvold's expert opined that "the most appropriate net worth to consider" in the face of Orvella's underreporting was $425,637. Rocksvold's request for $200,000 figure is slightly less than fifty percent of Orvella's adjusted net worth. Given the relatively short duration of the marriage and Orvella's ownership of the lion's share of assets brought into the marriage, we conclude Rocksvold's proposed figure is too high. A lesser amount is more equitable.

The primary asset jointly purchased during the marriage was a home. The couple filed a pretrial stipulation listing the fair market value of the home as $200,000 and the mortgage as $144,420. This left equity of $55,580. In light of Orvella's significant non-disclosures and dissipation of assets, we modify the dissolution decree to provide that Orvella shall pay Rocksveld the entire home equity of $55,580 as a cash property settlement within 180 days of the filing of procedendo.

### III. Alimony

Rocksvold contends the district court acted inequitably in declining to grant her any spousal support. She requests an award of $1500 per month for three years.

Iowa Code section 598.21A(1) (2015) sets forth the criteria for determining spousal support. Factors to be considered include the length of the marriage, the age and physical and emotional health of the parties, the property distribution, the earning capacity of each party, and any other factors the court may determine to be relevant. Iowa Code § 598.21A(1).

As noted, the marriage was relatively short and the parties were relatively young. They could engage in full-time employment notwithstanding certain health conditions. Although we have modified the decree to provide Rocksvold with a cash property settlement, the fact remains that Rocksvold gave up a well-paying job with health and retirement benefits to facilitate Orvella's farming operation. While Orvella called her motives for leaving into question, Rocksvold's trial testimony was corroborated by her pre-marital resignation letter. We are persuaded Rocksvold has a need for spousal support.

We turn to the amount and duration of the award. Rocksvold testified she considered searching for degree-related employment following the filing of her dissolution petition but she likely would have been required to relocate, a factor that would have made the temporary joint physical care arrangement unworkable. She also noted the importance of family ties in the area. By the time of trial, she had elected to pursue training for employment in the vicinity. She was "accepted to a fast track teaching program" and her goal was "to get [a] teaching degree in middle school science." Her decision inured to the benefit of Orvella, who would have to travel less to see his child.

On our de novo review, we conclude Rocksvold was entitled to a limited award of spousal support while she established herself in her new career. We modify the decree to grant her reasonable request of $1500 per month for three years.

## IV.   *Physical Care*

At trial, Orvella requested joint physical care of the child. The district court implicitly rejected the request after making the following findings:

The evidence discloses that these parents are totally lacking in mutual respect and cooperation in dealing with child care issues. [Orvella] has resorted to incidents of manipulation and subterfuge. . . . There is no effective communication between them. The court finds that [Orvella] is primarily at fault in creating and prolonging this atmosphere.

On cross-appeal, Orvella contends the court should have granted his request. While conceding there was "a fair amount of rancor between the parties," he argues it stemmed from "financial matters" rather than "custodial matters." On our de novo review, we disagree.

As noted, the parties exercised joint physical care pursuant to a temporary order. Rocksvold testified that, far from improving over time, the exchanges "got worse." Neither parent was blameless; both instigated conflict and exacerbated tensions. Rocksvold conceded as much, stating "we need to work on co-parenting big time." While we could elaborate on the numerous failures in co-parenting on a joint physical care basis, no useful purpose would be served by doing so. Suffice it to say the arrangement was fraught with difficulties.

Given the parents' lengthy and largely unsuccessful experience with a joint physical care arrangement, we conclude the district court acted equitably in declining to make the arrangement permanent. *See In re Marriage of Hansen*, 733 N.W.2d 683, 701 (Iowa 2007). We affirm the district court's decision to grant Rocksvold physical care of the child.

## V.     *Extraordinary Visitation*

The district court awarded Orvella liberal visitation, including weekly Wednesday evening visits and "[t]wo separate 14 day periods" during the summer. On cross-appeal, Orvella contends the district court should have granted him

extraordinary visitation, including Wednesday overnights and Thursday overnights following his weekend visitation. He cites the "equal schedule the child had become accustomed to and the frequent contact he had with his father for two and one-half years."

Visitation exceeding 127 days per year would entitle Orvella to an extraordinary visitation credit on his child support obligation. *See* Iowa Ct. R. 9.9. Given the parents' strained relationship and their failure to communicate effectively, we conclude additional court-ordered visits were not in the child's best interests.

## VI.     *Trial Attorney Fees*

Rocksvold challenges the district court's limited award of $1500 in trial attorney fees. She requests $16,214.22, urging that "more than a small portion of those fees were incurred trying to track down [Orvella's] assets" and "disposition of property outside of the court order," seeking to hold him in contempt, "and trying to stay in-step with [his] financial manipulation." We agree. *See In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989) ("[A]n award . . . rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.").

From the outset, Orvella withheld critical financial information from Rocksvold. On the day Rocksvold filed the dissolution of marriage petition, the district court entered a pretrial discovery order requiring the parties to exchange a host of financial documents, including "[a]n affidavit of financial status properly signed and notarized." To comply with the order, Orvella provided "a financial statement from his bank." Although Orvella's attorney stated the discovery would

be supplemented, months went by without additional responses. Rocksvold's attorney was forced to file a motion to compel in which he noted Orvella had yet "to provide an Affidavit of Financial Status" or other requested documents. Counsel also filed an application for rule to show cause as to why Orvella should not be held in contempt. Before a hearing on the matters, Orvella agreed to provide the requested documents within ten days. He did not do so, and Rocksvold filed another motion to compel. Orvella then filed an unsigned and unnotarized "preliminary draft" affidavit of financial status. Meanwhile, Orvella failed to timely pay child support and stopped making alimony payments. Rocksvold filed more motions to compel and to show cause. The obfuscation continued until the eve of trial, when Orvella filed a signed unnotarized list of assets and liabilities styled an "affidavit of financial status."

On this record, we conclude Rocksvold was entitled to have Orvella pay the entirety of her trial attorney-fee bill, totaling $16,214.22. We modify the dissolution decree to provide for the payment of this sum within 180 days of the filing of procedendo.

## VII. *Appellate Attorney Fees*

Rocksvold seeks an award of $3500 in appellate attorney fees. An award rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We grant Rocksvold's request and order Orvella to pay her appellate attorney-fee obligation of $3500 within 180 days of the filing of procedendo.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**