### In re The MARRIAGE OF John N. HOGELAND II and Marjorie M. Hogeland.

**Upon the Petition of John N. Hogeland II, Petitioner–Appellant/Cross–Appellee,**

**And Concerning Marjorie M. Hogeland, Respondent–Appellee/Cross–Appellant.**

**No. 88–1321.**

Court of Appeals of Iowa.

Oct. 5, 1989.

Marion R. Neely, of Neely & Martinek, Iowa City, for petitioner-appellant/cross appellee.

Sharon A. Mellon, of Mellon & Spies, Iowa City, for respondent-appellee/cross-appellant.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

This appeal and cross-appeal in a dissolution case involves a series of economic challenges to a decree dissolving a long-term marriage. We affirm as modified.

Petitioner-appellant John H. Hogeland II and respondent-appellee Marjorie M. Hogeland were married in 1960. At the time of marriage, John was a practicing dentist. The parties have three children who are now adults. Two are Marjorie's children from a previous marriage who were adopted by John and the third is a child born to the parties in 1961.

John is sixty-four years old and Marjorie is sixty-five. John has had serious health problems and although currently able to practice dentistry, he will not be able to do so for any extended period of time. He receives retirement benefits as a retired member of the United States Naval Reserve.

Marjorie is not currently employed. Her employment during marriage was primarily as a homemaker, although she provided some assistance in the dental office. The

trial court found, and we agree, she is employable at a minimum-wage-type job.

The trial court valued the parties' assets and liabilities and allocated them so that based on this valuation, John received assets in excess of liabilities of $243,868 and Marjorie received assets in excess of liabilities of $55,361. John then was ordered to make a cash payment to Marjorie of $94,256. Marjorie also was awarded alimony of $1,300 per month until John fully retires, at which time the alimony is to be reduced to $500 monthly. John was ordered to maintain a $100,000 life insurance policy with Marjorie as beneficiary as long as alimony of $1,300 a month is payable. When the alimony is reduced to $500 monthly, the insurance policy can be reduced to $50,000.

John challenges the valuation placed by the trial court on property awarded him. He contends the trial court did not adequately consider the income tax consequences, incorrectly valued his shares in a professional dental corporation, and incorrectly valued certain partnership interests. He also challenges the amount he is required to pay as alimony.

Marjorie cross-appeals, contending she should have a larger property settlement and more alimony, and she should have been awarded attorney fees. She also requests attorney fees on appeal. We affirm as modified.

## I.

John's major contention is the trial court did not adequately consider the income tax consequences when it allocated assets. The court is directed to consider the income tax consequences when allocating property in a dissolution. *See* Iowa Code § 598.21(1)(j), (3)(g) (1987); *see also In re Marriage of Hoak,* 364 N.W.2d 185, 193 (Iowa 1985); *In re Marriage of Dahl,* 418 N.W.2d 358, 360 (Iowa App.1987). John argues sufficient consideration was not given to the fact he received assets with a low cost basis while Marjorie received cash amounts. John was ordered to pay Marjorie an additional $94,256 in cash. He contends he will be required to liquidate assets

to make the payment and because of his low cost basis in these assets, he will owe substantial income tax when they are liquidated. John points out the trial court also failed to consider the income tax consequences of cashing in his retirement accounts.

John supplied expert testimony that the sale of assets awarded to him would result in an income tax obligation to him of approximately $56,000. The trial court's decree does not specifically address the issue of this proposed tax liability. Marjorie contends the tax consequences were considered because there was testimony that John could borrow the money to pay her, thus avoiding the tax consequences of a sale, or the retirement account could be transferred to Marjorie, thus avoiding taxes on it at this time.

We find no merit in Marjorie's arguments. While we recognize a loan is not subject to income tax, repayment of principal generally would be made with after-tax dollars. Additionally, with limited years until retirement, we determine John would have difficulty repaying the loan. We also reject Marjorie's argument on the retirement account. If John attempted to transfer the approximately $50,000 he has in a retirement account to Marjorie for $50,000 credit against his cash payment due, Marjorie would be correct in refusing to give him $50,000 credit because she would have substantial tax liability should she withdraw the funds.

■ John argues in failing to consider income tax consequences the trial court substantially overvalued the assets allocated to him. We find the trial court failed to consider the tax consequences on the IRA and KEO accounts. These accounts are subject to income tax on liquidation and cannot be valued at face value.

■ We look also to the tax due on liquidation of capital assets. We determine where, as here, the payment of a lump sum of cash to a spouse will in all probability require the liquidation of capital assets, the income tax consequences of such a sale should be considered by the trial court in

assessing the equities of the property and alimony award. The trial court did not adequately consider the tax consequences of a liquidation. We consider the tax consequences of liquidation of assets to pay Marjorie as a factor in assessing the equity of the economic provisions of this decree. *See Hoak,* 364 N.W.2d at 193; *Dahl,* 418 N.W.2d at 360.

## II.

John's next contention is the trial court overvalued his stock in the professional dental corporation. Marjorie contends the stock was undervalued.

John and another dentist practice dentistry as a professional corporation. The stock in the corporation is subject to a stock redemption agreement, which provides the value of the stock shall be established every two years and the remaining stockholder can buy at that price, less a discount. In 1983 the two stockholders established a value of $28,750 for John's stock. If John were to sell his stock, the agreement requires him to first offer it to the remaining stockholder for $23,000.

The trial court valued John's stock at $55,000. John contends the trial court should have valued the stock at $23,000, the redemption price, and the trial court should not have established a value for the good will of the professional corporation. John directs us to holdings in other jurisdictions where courts have determined any good will of a professional practice should not be considered in a dissolution action. *See Powell v. Powell,* 231 Kan. 456, 463, 648 P.2d 218, 223 (1982) (court determined a professional practice is personal to the practitioner and is totally dependent on the professional); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 355 (Wis.Ct. App.1981) (court was not persuaded that the concept of professional good will as a divisible marital asset should be adopted in Wisconsin).

We recognize good will in a professional practice is dependent on the ability of the professional to continue to practice his or her profession. When the professional corporation is owned with other professionals, we also must consider that any good will is dependent too on the relationship of the professionals. The good will, if any, of a professional corporation is a factor that bears on the future earning potential of the professional.

We consider future earning capacity in considering the equities of the economic provisions of a dissolution. The future or good will of a professional practice is a factor that needs to be considered in assessing the economic issues in a dissolution. Where the professional will continue the practice, it is a factor that should be considered in assessing future earning capacity of the professional. This has been done here, as the substantial alimony award, guaranteed by life insurance requiring payment of premiums by John, is based at least in a large part on John's future earnings as a dentist. We therefore disagree with the trial court's decision to also treat good will as an asset in valuating the stock in the professional corporation.

John also argues the trial court did not properly consider the restrictions on sale, which limit the marketability of John's stock. Generally, stock should be valued at market value if the market value can be ascertained. *In re Marriage of Hoak,* 364 N.W.2d 185, 192 (Iowa 1985); *In re Marriage of Moffatt,* 279 N.W.2d 15, 18–19 (Iowa 1979). However, restrictions on marketability and legal restrictions on sale can justify a discount of the stock. *Hoak,* 364 N.W.2d at 192. The Iowa court has recognized the value of stock in a dissolution is not necessarily decided by a value fixed in a stock redemption agreement where there is a finding that as a practical matter, the spouse owning the stock is not limited to the option price. *Moffatt,* 279 N.W.2d at 19. In such a case, the stock option price is one factor to be considered in determining the value of the interest. *Id.* Unlike the stock in *Moffatt,* we find it is probable John will be required to sell the stock at the stock option price.

A professional corporation presents difficult problems in valuing because its income comes almost exclusively from the

efforts of the professionals and its value is dependent on continual professional performance and the cooperation among the shareholders. The value set by the stockholders has been consistently set and represents a value at which the shares must be sold. Furthermore, stock in a professional corporation can only be sold to another professional of the same discipline. It is doubtful another professional would purchase the stock unless he or she felt they could establish a working relationship with the other professionals. We determine the current value of the professional stock is at or near the stock redemption price. We find the stock value to be less than $30,000 and find the trial court overvalued it by $15,000.

Marjorie contends the trial court improperly considered a debt John allegedly owed to the corporation. We agree with the trial court's assessment of the debt and reject Marjorie's argument.

John challenges the refusal of the trial court to discount John's one-third interest in a real estate partnership ten percent below market value. John's partners have a first right to purchase his interest at ten percent below market. The trial court discounted the value by five percent. We see no reason to disturb the trial court's valuation on this issue.

 Both parties challenge the alimony awards. Marjorie absented herself from the job market with the resulting loss of substantial social security and retirement benefits. See In re Marriage of Beeh, 214 N.W.2d 170, 174 (Iowa 1974). This is a case where an alimony award is justified. John earns about $60,000 annually from the dental practice and receives about $7,200 annually from his pension. Both parties have approximately equal assets, so their investment income should be similar. The alimony award is equitable and will not be disturbed.

Marjorie contends the trial court abused its discretion in not ordering John to pay her attorney fees. We disagree. She has assets of her own and thus has the means to pay her own fees. See Dahl, 418 N.W.2d at 361.

The issue in any property division is what is equitable. See In re Marriage of Yates, 365 N.W.2d 49, 51 (Iowa App.1985); In re Marriage of Stewart, 356 N.W.2d 611, 612 (Iowa App.1984); In re Marriage of Byall, 353 N.W.2d 103, 106 (Iowa App. 1984). We consider property division and alimony together in evaluating their sufficiency. In re Marriage of Griffin, 356 N.W.2d 606, 608 (Iowa App.1984).

We reduce the cash payment John shall make to Marjorie to $50,000. In all other respects, we affirm.

Marjorie has filed an application for attorney fees on appeal. She has received substantial assets and is able to pay her own fees. We reject her application.

Court costs on appeal are taxed one-half to each party.

AFFIRMED AS MODIFIED.