# IN THE COURT OF APPEALS OF IOWA

No. 19-0541
Filed July 22, 2020

IN RE THE MARRIAGE OF LINDA LEA NISSEN
AND TIMOTHY LAVERN NISSEN

Upon the Petition of
**LINDA LEA NISSEN, n/k/a LINDA LEA TOMLINSON,**
        Petitioner-Appellant,

**And Concerning
TIMOTHY LAVERN NISSEN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


        Linda Tomlinson appeals the decree dissolving her marriage to Timothy

Nissen. **AFFIRMED AS MODIFIED.**



        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Becky S. Knutson and Katelynn McCollough of Davis, Brown, Koehn, Shors

& Roberts, P.C., Des Moines, for appellee.



        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Linda Tomlinson, formerly Linda Nissen, and Tim Nissen married in 1977 and divorced in 2018. Linda appeals, contending (1) the district court's property division was inequitable "considering Tim's dissipation of marital assets" and (2) the district court abused its discretion in failing to order Tim to pay her trial attorney fees.

## I. Dissipation of Assets

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). Dissipation occurs when a spouse loses or disposes of property otherwise subject to division. *Id.* at 700–01. The doctrine does not apply to monies used for "legitimate household and business expenses." *Id.* at 701.

In determining if a spouse has dissipated assets, the court applies a two-pronged test. *Id.* First, the court must decide "whether the alleged purpose of the expenditure is supported by the evidence." *Id.* (quoting *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007)). Second, the court must determine "whether that purpose amounts to dissipation under the circumstances."[1] *Id.*

---

[1] In *Fennelly*, 737 N.W.2d at 104-05, the court elaborated as follows:
> The second issue requires the consideration of many factors, including
> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

Our de novo review of the record reveals the following pertinent facts. Linda and Tim owned and lived in a home in Ankeny, Iowa. Communication between them deteriorated over time. In the spring of 2017, Tim began "seriously looking for a[nother] place to live." By the summer of that year, he found a home in Polk City. He made an offer and, in early November 2017, withdrew $105,000 from his 401(k) retirement account to cover the down payment. *See In re Marriage of Benson*, 545 N.W.2d 252, 253 (Iowa 1996) (explaining pension plans and noting special tax advantages associated with qualified plans under 26 U.S.C. section 401). He did not tell Linda about the offer until Thanksgiving of that year. Although he mentioned the location and address, he omitted the source of his down payment, simply stating it came from the couple's "financial resources."

Linda was "complete[ly] surprise[d]" by the disclosure. She contacted an attorney and, on the Monday following Thanksgiving, filed a petition for dissolution of the marriage. On the same day, the district court filed an asset preservation order restraining the parties

> from withdrawing, transferring, encumbering, borrowing against, or otherwise disposing of any money in checking accounts, savings accounts, retirement accounts, [or] pension accounts held individually, jointly with each other, or jointly with any third party, without prior Court approval or without prior written agreement of the parties except for the purpose of paying routine household or business expenses, utility bills, other regular and normal monthly bills, or necessary and reasonable legal expense for purposes of obtaining representation in this matter.

Also on the same day, Tim scheduled a closing on the Polk City home. Because he was financing the purchase, he asked Linda to attend the closing to waive her spousal interest. Linda refused, and the loan transaction fell through.

Tim decided to circumvent the need for a spousal waiver by paying cash for the home. He withdrew an additional $468,332.50 from his 401(k) account and bought the home outright for $405,000. Although Tim claimed he authorized the withdrawal before he was served with the asset preservation order, he closed on the Polk City home two days after the order was served on him. Linda did not learn about the transaction until "quite some time" later.

Before the divorce was finalized, Tim also obtained a loan to purchase a 2005 Cadillac. He acknowledged taking out the loan after the asset-preservation order was filed, and he acknowledged failing to tell Linda about the purchase. Nor did Tim obtain court approval for the purchase. Finally, he agreed the vehicle was exclusively for his use.

The district court found "that both purchases were intended to be for [Tim's] benefit alone." But the court also found "there is no evidence that Tim hid, depleted or diverted the funds he withdrew from his 401K." We partially agree.

Applying the *Kimbro* test, there is no question that Tim's 401(k) retirement assets were used to purchase the Polk City home. We turn to whether Tim's use of the funds amounted to dissipation. The home purchase came on the heels of the couple's separation, was atypical of expenditures made by the couple in the past, benefited Tim exclusively, and—Tim's protestations notwithstanding—was unnecessary at that juncture. *See Kimbro*, 826 N.W.2d at 701 (setting forth factors for consideration in determining whether dissipation occurred). We are persuaded that Tim diverted funds in his 401(k) account to his own use—funds that would have been subject to equitable division with Linda.

We turn to the remedy for Tims's dissipation of assets. The district court summarized Linda's proposed relief as follows:

> [T]he value of Polk City property should be a marital asset; the total of the 401K withdrawals less the value of the Polk City property and the 'standard' expenditure of $26,666.25 for 2017 and 2018 should be added to the assets Tim receives in the marital distribution; and Tim's 2005 Cadillac and unknown 2018 State and Federal tax debts should be set aside as non-marital debts.

Although the court "strongly disagreed with Tim's actions," it declined to adopt Linda's proposed remedy in full. Specifically, the court refused to add to Tim's side of the ledger "the total of the 401K withdrawals less the value of the Polk City property and the 'standard' expenditure of $26,666.25 for 2017 and 2018."

The court awarded Linda the Ankeny home, ordered Tim to pay off the debt associated with that home, and granted her the funds in her 401(k) account. Tim received the Polk City home and all but one of the vehicles in the parties' possession, including the Cadillac. The court ordered Tim to transfer to Linda $197,706.82 from his 401(k) account pursuant to a qualified domestic relations order, ordered the division of his pension, required him to pay Linda's credit card bill of $4057.81, and set aside to him the debt on the Cadillac, as well as his 2018 tax liabilities.

Linda filed a motion to amend or enlarge the court's findings. *See* Iowa R. Civ. P. 1.904(2). She agreed that of the $599,998.75 Tim withdrew from his 401(k) in November 2017, the court correctly found $26,666.25 to be a "'standard' annual withdrawal[ ]—no dissipation." But she asserted "the difference, $573,332.50 ($599,998.75 – $26,666.25), was dissipation." She noted that "[o]f that amount, Tim used $405,000 to purchase the Polk City property" and "kept the remaining

$168,332.50 ($573,332.50 – $405,000) to pay taxes or other expenses." Linda also explained that Tim withdrew $186,666.24 from his 401(k) account in 2018. Subtracting the "standard" withdrawal of $26,666.25 from that amount, she asserted that the remaining $160,000 was used to pay for income taxes incurred in 2018, which "would not have been necessary but for his dissipation of the 401(k) to purchase the Polk City property." While acknowledging that the district court held Tim responsible for his 2018 income tax obligations, she asserted the decree made "no reference to the $160,000 of 401(k) withdrawals Tim made to pay those taxes." She proposed including "$328,332.50 ($168,332.50 + $160,000.00) as an asset of Tim's in the overall property distribution because he wasted $328,332.50 of the 401(k) to pay taxes." The district court denied the motion.

On appeal, Linda contends the district court's remedy "fail[ed] to include Tim's dissipation of the joint 401(k) account to pay his separate tax debt." She asks this court to "modify the lower court's property division by requiring Tim to transfer an additional $223,106.08 to" her. Linda calculates that sum as follows:

> Adding $328,332.50 as an asset awarded to Tim to the rest of the district court's property division, Tim received $1,067,468.81 in net assets compared to Linda's $621,256.65 . . . . To equalize the parties' net assets so each party receives $844,362.73, Tim must transfer to Linda an additional $223,106.08.

On our de novo review, we agree that some of the funds Tim withdrew from his 401(k) account in late 2017 and in 2018 were used to pay taxes resulting from his premature withdrawals to purchase the home. Tim conceded as much, as reflected in the following exchange with his attorney:

> Q. You've anticipated a tax—federal tax debt of $79,000 and a state tax debt of $19,500 for your 2018 taxes; is that correct?
> A. That is correct.

Q. That would be based on the borrowing—or the pension distribution you had to get to pay 2017's taxes? A. The 401(k) withdrawal, correct.

We also agree that a figure representing his dissipation of funds should be added to Tim's side of the ledger. *See In re Marriage of Nevins*, No. 11-1541, 2012 WL 3590057, at *6 (Iowa Ct. App. Aug. 22, 2013) (crediting husband's side of the ledger with amounts he withdrew from his 401(k) account for early-withdrawal penalties and attorney fees). But we disagree with the $328,332.50 figure proposed by Linda.

As Tim notes, Linda's table "fails to include [his] debt obligation" of "$117,879.64 representing the current mortgage on the [Ankeny] property that was awarded to Linda." Tim willingly assumed the obligation and, contrary to Linda's assertion, the debt was not incurred through his dissipation of assets. Accordingly, we subtract the mortgage from the dissipated-asset total of $328,332.50 to arrive at a dissipated asset total of $210,452.86.

We are less persuaded by Tim's remaining arguments. Contrary to his assertion that Linda's table excludes a credit card debt, we note that Linda's Visa debt of $4057.81 was allocated to him and subtracted from his assets. As for his assertion that Linda failed to subtract the $18,500 loan on the Cadillac from his assets, we note that she did so but placed the net value of the Cadillac in a different column of her table.[2] Finally, we are unpersuaded by his contention that his 2018

---

[2] Although Linda now argues that the debt should not have been subtracted, she waived that issue by including the debt in her table. Linda failed to place the Cadillac's negative value of $1382.00 in Tim's column. We have subtracted that sum from his total assets.

contingent tax liability should have been subtracted from his assets because the district court held him solely responsible for the debt.

Rather than subtracting the 2018 tax liabilities from his side of the ledger, we agree with Linda that the amounts of those liabilities must be added to his side of the ledger. As noted, Tim conceded he withdrew $98,500 ($79,000 + $19,500) from his 401(k) account to cover taxes that would be due in 2018 as a result of his earlier premature withdrawals. That sum was subject to equitable division. *See In re Marriage of Hogeland*, 448 N.W.2d 678, 680–81 (Iowa Ct. App. 1989) (holding statutory law explicitly required the district court to consider tax liabilities when allocating marital property); *Nevins*, 2012 WL 3590057, at *7; *cf. In re Marriage of Hayne*, 334 N.W.2d 347, 353 (Iowa Ct. App. 1983) ("Although liquidation of respondent's Keogh plan would have entailed certain tax liabilities, the court did not order him to liquidate his plan, and it is evident that respondent had other assets available to meet the court's orders without liquidating it. It was no error for the court to consider the full value of the Keogh plan without figuring in the potential tax liability upon liquidation when determining the value of marital property for division under the terms of the decree."); *Solomon v. Solomon*, 857 A.2d 1109, 1117 (Md. 2004) (holding "tax liabilities may be considered as other factors for purposes of distributing a marital property award . . . only when they are immediate and specific or not speculative" (internal citations and quotations omitted)). Although Linda is correct that he withdrew $160,000 in 2018, she provided scant if any evidence of how the balance of the withdrawn funds was used. Accordingly, we decline to add the entire $160,000, as Linda requests. Instead, we add

$98,500. We accomplish that by reducing the previously determined dissipated asset sum of $210,452.86 by $61,500 ($160,000 – $98,500).

We arrive at a final dissipated asset figure of $148,952.86. We add this figure to Tim's side of the ledger. Because Tim does not contest the values Linda assigned to the remainder of his assets, we conclude his total assets subject to division were as follows:

|                              | Tim          | Linda        |
| ---------------------------- | ------------ | ------------ |
| Total Assets before Remedy   | $741,812.08  | $621,256.65  |
| Dissipated Assets            | $148.952.86  |              |
| Total Assets after Remedy    | $890,764.94  |              |

We conclude Tim must make an equalizing payment of $134,754.14 to Linda as a remedy for his dissipation of assets (($890,764.94 – $621,256.65) / 2). We modify the decree to require the payment of this sum within ninety days after the filing of procedendo.

## II.    Trial Attorney Fees

Linda contends the decree should be modified "to order Tim to pay at least half of [her] $24,708.50 ($12,354.25) [in attorney fees] she incurred during the trial phase of this case." The district court denied the request, reasoning as follows:

> Tim has incurred $28,442.00 in attorney fees, and Linda has incurred $24,708.50 . . . in attorney fees. Comparing the fees incurred by each party and the matters presented to the Court, the Court cannot conclude that Linda's requested attorney fees are unfair or unreasonable; however, neither party, at this time, has a greater ability than the other to pay. Accordingly, each party should be responsible for their own attorney fees.

"[A]n award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage*

*of Francis*, 442 N.W.2d 59, 67 (Iowa 1989).  We conclude the district court did not abuse its discretion in declining to order Tim to pay Linda's attorney fees.

### III.    *Appellate Attorney Fees*

Linda seeks an award of $12,285 in appellate attorney fees.  Again, an award is discretionary.  *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).  In light of the increased property settlement Linda will receive, we conclude she will have the ability to pay her own appellate attorney fees. Accordingly, we deny her request.

**AFFIRMED AS MODIFIED.**