# IN THE COURT OF APPEALS OF IOWA

No. 22-0080
Filed November 17, 2022

IN RE THE MARRIAGE OF JODI JEAN SNYDER
AND ADAM JEFFERY SNYDER

Upon the Petition of
**JODI JEAN SNYDER,**
    Petitioner-Appellant,

**And Concerning**
**ADAM JEFFERY SNYDER,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Ida County, Jeffery L. Poulson, Judge.

Jodi Snyder appeals from a dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

Maura Sailer of Lohman, Reitz, Sailer, Ullrich & Blazek, Denison, for appellant.

Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, for appellee.

Considered by Greer, P.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

Following a trial, the district court dissolved the marriage of Jodi and Adam Snyder. Jodi appeals. She challenges the property division and the district court's refusal to require Adam to pay her trial attorney fees. Both parties request appellate attorney fees.

## I.     Property Division

Dissolution of marriage actions are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.* While we give weight to the findings of the district court, particularly concerning the credibility of witnesses, we are not bound by them. *Id.* The district court's ruling will only be disturbed when the ruling fails to do equity. *Id.*

The district court divided the parties' assets and debts using a recapitulation statement listing each asset/debt, the value of it, and which party received it. After totaling each party's respective net worth, the court determined that Adam ended up with a net worth of $19,727.00 more than Jodi. To make the division of property equitable, the district court ordered Adam to pay an equalization payment to Jodi equal to one-half of the difference, or $9863.50.[1]

Jodi does not challenge the distribution scheme used by the district court of totaling each party's net worth and making the party with the higher net worth make

---

[1] The district court issued a decree. Both parties filed motions to reconsider pursuant to Iowa Rule of Civil Procedure 1.904(2). The court amended the decree in ruling on the motions. Throughout this opinion, we discuss, analyze, and address the decree in its final form after the court's ruling on the competing Rule 1.904(2) motions.

an equalization payment to the other. Rather, she disagrees with the inclusion of certain assets and debts on the recapitulation statement, making two categories of challenges to the division of the couple's property. First, she claims the district court improperly accounted for temporary support payments Adam made to a joint account rather than to the clerk of court. Second, she claims the district court failed to account for waste Adam committed by disposing of certain assets and incurring certain debts after the parties separated. We tackle these claims in turn.

### A. Accounting for Temporary Support Payments

The district court ordered Adam to pay temporary child and spousal support to the clerk of court prior to trial. The issue before us regarding accounting for these support payments stems from communication problems Adam had with his first attorney that led to double payment of some of his obligation.[2]

The record is replete with evidence that Adam's first attorney neglected to keep him informed of events, signed his name to documents, and failed to respond to discovery requests, leading to a variety of sanctions. Adam testified that he was under the impression from his first attorney that the support payments would be withdrawn from his paycheck, but he had never been told he needed to send payments to the clerk of court. When Adam noticed payments were not being withheld from his wages, he tried to meet his support obligation by transferring money from his personal account to a joint account used by Jodi. He believed this satisfied his support obligation. Eventually, wage withholding began, but, because

---

[2] Adam replaced his first attorney with a second attorney a few months before trial. The second attorney represented Adam at trial. Neither the first nor the second attorney is Adam's attorney on appeal.

there was no record of the payments Adam had made directly to the joint account, the withholding included amounts covering current and past due amounts. So, according to Adam, he ended up paying $6633.00 in support twice—once directly to Jodi and a second time from wage withholding. The district court found Adam's testimony credible and included $6633.00 as an asset in Jodi's column on the recapitulation statement to account for the double payment.

Jodi acknowledges that Adam made payments directly to their joint account and the purpose of those payments was to satisfy his support obligations. To her credit, Jodi does not challenge the notion that she should have to account for receiving support payments twice. She does, however, challenge the amount she actually received. While she acknowledges Adam made over $6633.00 in support payments to their joint account, she testified that Adam had access to that account, he made withdrawals from the account, and she only withdrew some money from the account before Adam took the rest. She estimates the amount she withdrew at $3200.00, and she asks that that figure be used as an asset on her side of the recapitulation statement rather than the $6633.00 used by the district court.

Given the vague nature of Jodi's testimony estimating the amount of double payments she received coupled with the district court's finding that Adam was credible on the details of this issue, we decline to disturb the district court's valuation of the double payment received by Jodi at $6633.00.

B.     Waste—Dissipation of Assets and Incurring of Debt

Jodi asserts multiple claims of waste by Adam that she contends were not properly accounted for in the property division. The claimed waste consists of dissipated assets and post-separation debt.

### 1. Dissipated Assets

Jodi claims Adam disposed of assets after the parties separated. She wants the value of those assets included in Adam's column of the recapitulation statement, which the district court did not do. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 106 n.6 (Iowa 2007) (noting that "[t]ypically, a dissipated asset is included in the marital estate and awarded to the spouse who wasted the asset"). The disputed assets are the proceeds of a cashed-in retirement account and two bonus checks Adam received from his employer.

We decline to address this issue because Jodi failed to preserve error. Before we decide issues on appeal they must be raised and decided by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). While Jodi raised this issue during trial, the district court's original decree did not address it. Jodi filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the court to enlarge its ruling to address the issue of waste, but the only claimed waste she asked the court to address was post-separation credit card debt Adam incurred. The motion does not mention the dissipation of assets that Jodi now claims on appeal, so the court understandably did not address the issue. As Jodi failed to request a ruling on the dissipation of the retirement account and the two bonuses, the issue is not preserved for our review. *Id.*

### 2. Post-Separation Debt

Jodi also contends Adam engaged in waste by incurring two credit card debts after the parties separated. She requests that Adam be made responsible for those debts without the value of the debts being included in Adam's column of the recapitulation statement in calculating his resulting net worth. The district court

did not address this issue in its decree. However, Jodi's rule 1.904(2) motion specifically asked the court to address this issue, which the court did in its ruling on the motion, so Jodi has preserved error on this issue. *Id.*

In the two years between the couple's separation and the dissolution trial, Adam accumulated new debt on two credit cards. Adam had a Fleet Farm credit card that had a balance of around $300.00 when the parties separated. It had grown to a balance of $8146.00 by the time of trial—an increase of $7846.00. Adam also obtained a Scheels credit card after the separation on which he had accumulated a balance of $10,061.00. Jodi contends these debts amount to dissipation. At trial, Adam provided no receipts, lists, or explanation of how he accumulated these debts.[3]

The court may consider the "dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). "[W]here the dissipation is debt, it is appropriate to set aside the debt for the spouse who incurred the debt and *not* include it in the marital estate." *Fennelly*, 737 N.W.2d at 106 n.6.

There is a two-pronged test to analyze dissipation claims. *Kimbro*, 826 N.W.2d at 701. The first prong is to determine "whether the alleged purpose of the expenditure is supported by the evidence." *Id.* (quoting *Fennelly*, 737 N.W.2d at 104). If the first prong is satisfied, the second prong is to determine "whether

---

[3] Adam tried to present testimony about how the debts were incurred. However, the district court sustained objections to that testimony due to a prior ruling that prohibited Adam from providing an accounting on the credit card debt as a sanction for failing to provide discovery about the credit cards. The propriety of that sanction and the district court's exclusion of Adam's testimony or other evidence about an accounting of the credit card debt is not before us.

that purpose amounts to dissipation under the circumstances." *Id.* (quoting *Fennelly*, 737 N.W.2d at 104). "When a spouse claims the other party dissipated assets and can identify the assets allegedly dissipated, the burden shifts to the spending spouse to 'show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence.'" *Id.* (quoting *Fennelly*, 737 N.W.2d at 104). The dissipation doctrine does not apply when the spending spouse used the assets or incurred the debt for a legitimate household expense. *Id.*

The district court declined to find that Adam dissipated the marital estate by incurring the two credit card debts. The court's reasoning was that the credit card debt was offset by childcare credit and stimulus money that Jodi spent after separation. The court reasoned "[b]oth parties utilized funds received during the marriage, and one is deemed to offset the other." While this may be true, the flaw in this reasoning is that Adam did not claim, let alone prove, that the funds Jodi used were not used for legitimate household expenses. In fact, the only testimony on that subject suggests that all money Jodi spent was for legitimate household expenses. So, the fact that Jodi expended funds she received for legitimate household expenses does not excuse Adam for incurring post-separation debt for which he cannot account.

On our de novo review, we find that Adam engaged in dissipation by incurring the Fleet Farm and Scheels credit card debts without showing that the debts were incurred for legitimate household expenses. Therefore, while the additional $7846.00 of debt on the Fleet Farm card and the entire $10,061.00 on the Scheels card were properly made the responsibility of Adam, the value of those

debts should not have been included as debts in Adam's column on the recapitulation statement. *See Fennelly*, 737 N.W.2d at 106 n.6 ("[W]here the dissipation is debt, it is appropriate to set aside the debt for the spouse who incurred the debt and *not* include it in the marital estate.").

When that $17,901.00 of post-separation debt is removed from Adam's column, the disparity in the parties' net worth grows by an equal amount. To achieve equity, Adam's obligation for an equalization payment needs to be increased by half of the additional disparity (i.e., increase by $8950.50). As a result, we modify the district court's decree to increase Adam's property settlement payment obligation owed to Jodi from $9863.50 to $18,814.00.[4]

## II.     Trial Attorney Fees

Jodi seeks an award of trial attorney fees, which the district court declined to award. We review an award of trial attorney fees in a dissolution-of-marriage action for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)).

Jodi contends Adam has a much better ability to pay. Adam is a manager at a meatpacking plant making a yearly salary of $102,760.00. In comparison, Jodi makes $28,660.00 as a pharmacy technician. The court considered the earning disparity but concluded that the "parties' affidavits of financial status

---

[4] Another way to calculate the property settlement figure would be to take the original disparity figure of $19,727.00 and add the additional disparity figure of $17,901.00, yielding a total disparity of $37,628.00 in Adam's favor. By ordering Adam to pay one-half of that disparity, or $18,814.00, the disparity is eliminated.

indicate that neither has the financial ability to pay the other's attorney's fees." While this may not be the decision we would have reached, we cannot say the district court's refusal to award Jodi trial attorney fees was an abuse of discretion. As a result, we affirm on this issue.

## III.    Appellate Attorney Fees

Both parties seek appellate attorney fees.   In a dissolution-of-marriage action, appellate attorney fees are not awarded as a matter of right but rather rest in our discretion. *Id.* Factors to consider in determining whether to award appellate attorney fees include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)).

Jodi has a greater need than Adam for an attorney fee award, and Adam has a greater ability to pay.  While Jodi was not completely successful on appeal, the appeal had merit and resulted in a significant modification in her favor. Exercising our discretion, we decline Adam's request for appellate attorney fees, and we grant Jodi's in part.  As Jodi was successful on approximately one-third of the issues she raised on appeal, we determine Adam should pay one-third of the reasonable and necessary fees Jodi incurred on appeal.  As Jodi has not submitted an affidavit of attorney fees, we cannot determine that amount.  Therefore, we remand to the district court to determine the reasonable and necessary attorney fees incurred by Jodi on appeal. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021).  Once that figure is determined, the district court shall order Adam to pay one-third of that amount to Jodi and/or her attorney.

**IV.    Conclusion**

We modify the district court's decree to increase Adam's property settlement payment obligation owed to Jodi from $9863.50 to $18,814.00.  We affirm the denial of Jodi's claim for trial attorney fees.  We deny Adam's request for appellate attorney fees.  We grant Jodi's request for appellate attorney fees in part.  We remand to the district court to order Adam to pay a portion of Jodi's appellate attorney fees as described in this opinion.  Costs on appeal shall be divided two-thirds to Jodi and one-third to Adam.

**AFFIRMED AS MODIFIED AND REMANDED.**