# IN THE COURT OF APPEALS OF IOWA

No. 22-0319
Filed April 12, 2023

IN RE THE MARRIAGE OF DALE PAULSEN
AND TERESA PAULSEN

Upon the Petition of
DALE LOUIS PAULSEN,
        Petitioner-Appellant,

And Concerning
TERESA ANN PAULSEN, n/k/a TERESA ANN GILLIAM,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        Dale Paulsen appeals the decree dissolving his marriage to Teresa Gilliam.

**AFFIRMED.**


        Thomas E. Maxwell of Leff Law Firm, L.L.P., Iowa City, for appellant.

        James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**VAITHESWARAN, Presiding Judge.**

Dale Paulsen and Teresa Gilliam met in 2017, got engaged six months later, and married in mid-2018.  At the time of the marriage, both had homes, retirement accounts, and bank accounts.  Dale moved into Teresa's home and sold his own.  He also cashed in a retirement account.

In 2020, Dale petitioned for a dissolution of the marriage.  Following trial, the district court dissolved the marriage, granted Teresa her home, and awarded Dale some of the personal property he requested.  The court added the following proviso: "Other than these items, the parties shall retain any and all items of personal property in their possession, including motor vehicles, retirement accounts, bank accounts, and insurance policies."

On appeal, Dale contends: the district court should have awarded him (1) a portion of the increase in equity in Teresa's home, (2) the appreciation in Teresa's retirement accounts, (3) a credit for half the difference in the funds each withdrew from a joint bank account; and (4) a credit for Teresa's alleged dissipation of assets.  Teresa seeks to have Dale cover her appellate attorney fees.

## I.  *Equity in Teresa's Home*

The district court concluded "it would be inequitable for [Dale] to receive any portion of the appreciation in the equity in [Teresa's] residence."  The court reasoned that Dale "made minimal tangible contributions to the residence during this brief marriage."  In particular, the court said, "[t]he financial burden related to the maintenance of the household fell to [Teresa]; she paid the bills for the mortgage and utilities."  Additionally, the court determined "the amount of any

claimed appreciation" was "speculative at best." Finally, the court cited the brevity of the marriage.

Dale takes issue with the court's conclusion. He asserts he "contributed to the marriage and appreciation of the equity in the house" by performing remodeling work in the basement and he deposited funds into a joint bank account and paid certain expenses from what he contends was a premarital account. He also contends that "[t]he record provided credible evidence from which to determine an increase in the equity of the . . . home." He seeks an award of half the difference between the equity in the home near the time of the marriage and the equity at the time of trial, which he estimates to be $40,471.

Appreciation may be characterized as marital property. *See In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995). In evaluating appreciation, how an asset appreciated—fortuitously versus laboriously—is less of a concern if the marriage is of long duration. *See In re Marriage of Fennelly and Breckenfelder*, 737 N.W.2d 97, 104 (Iowa 2007). In a marriage of short duration such as this one, that consideration may be relevant. *See In re Marriage of Hansen*, 886 N.W.2d 868, 873 (Iowa Ct. App. 2016).

Dale's name was never on the deed or mortgage of Teresa's home. Dale testified he "installed hardwood flooring" in the basement and "cedar siding on the wall" and "did the ceiling" and "electrical" work. Although he claimed he paid for some of the expenses with premarital funds, he failed to provide documentation to support the claim. He also failed to contribute to the mortgage payment of $1656.36 per month or the electricity, gas, water, internet, and cable payments. Teresa testified, "I paid the bills."

We recognize Dale sold his home during the marriage and deposited the proceeds of $32,767.72 into a joint account. But there is scant indication that he used those funds for the remodeling project or for the home's upkeep. To the contrary, Dale conceded he used a portion of the proceeds to pay off a loan on his vehicle. In fact, $17,922.13 was expended for that purpose. While Dale testified "[a]nother $10,000 was used to pay off the wedding ring," Teresa essentially disputed that assertion, stating the balance was used to pay Dale's outstanding debt of $10,000 to the Internal Revenue Service as well as other debts he incurred. In short, Dale's home sale proceeds were not invested in Teresa's house.

Even if we were to accept Dale's testimony that some of the proceeds remained in the joint account and were used by Teresa, Dale testified the balance was at most $4000. That amount equated to less than three months of the mortgage payments Teresa made.

We turn to Dale's assertion that Teresa's home appreciated significantly during the marriage. Dale's claim was based on a printout from the Zillow real estate website, estimating the value at $321,800. That value was more in line with Teresa's valuation of $316,700 than Dale's estimate of $350,000. *See id.* (noting "there was no appreciation in the home's value during the [four-year] marriage").

Finally, as the district court pointed out, the marriage was brief. *See* Iowa Code § 598.21(5)(a) (2020). In response to questions from the court, Dale testified he knew his wife for three and one-half years but was only married and living with her for two.

On our de novo review, we conclude the district court acted equitably in declining to award Dale any appreciation in the value of Teresa's home.

## II. Appreciation of Teresa's Retirement Accounts

The district court declined Dale's request to divide the appreciation in Teresa's retirement accounts, reasoning that Dale "chose to liquidate" his retirement funds "to pay debts he had incurred prior to the marriage, as well as expenses during the marriage." The court also invoked the reasons given for declining to divide the appreciation in Teresa's home.

On appeal, Dale argues, "It was inequitable that [he] did not receive any of the appreciation in Teresa's retirement accounts, especially those that received contributions during the marriage." He reprises the arguments raised in connection with the home and asserts his contributions of marital and premarital funds "made it easier for Teresa to contribute to her retirement account available through her employer" and "allowed her to preserve her existing retirement accounts."

Preliminarily, we note that the account Dale contends he used to pay "[m]arital expenses" did not contain premarital funds. By Dale's own admission, that account was opened after the marriage to receive his paychecks. While Dale also may have deposited proceeds "from the sale of merchandise," those items were sold during the marriage.

Turning to Dale's claim that Teresa contributed to the retirement accounts during the marriage, Teresa testified that was not the case for most of her accounts. While some of them were rolled over into other retirement vehicles, any growth was attributable to market forces rather than additional investments.

Teresa acknowledged she regularly contributed to one retirement account during the marriage. The appreciation in that account was appropriately not

divided, given the short duration of the marriage and the minimal financial contributions Dale made to the household.

### III.     Bank Withdrawals

Before the dissolution action was filed, both spouses withdrew funds from their joint account, with Teresa withdrawing more than Dale. Dale asked the district court to divide the difference. The court declined. On appeal Dale contends, "[e]quity supports that those withdrawn funds, which are marital assets, should be balanced" and he "should receive $3548.95."

In adjudicating property rights, we generally examine the parties' net worth as of the trial date. *See In re Marriage of Muelhaupt*, 439 N.W.2d 658, 661 (Iowa 1989). At the same time, we recognize "the need for flexibility in making equitable distributions based on the unique circumstances of each case." *In re Marriage of Campbell*, 623 N.W.2d 585, 588 (Iowa Ct. App. 2001).

While the funds were jointly held, most if not all the funds Teresa withdrew came from savings she accrued, together with her wages. More to the point, Dale testified he left $10,000 in the account to allow Teresa to pay expenses during the separation. In his words, "there was over $10,000 left with her to cover expenses while we continued to live together and work on this." In light of that assertion, his testimony that half the difference between what he withdrew and what she withdrew "would be a nice recovery, if at all possible" rings hollow.

In any event, the account was closed and was not an asset available for division at the time of trial. We conclude the district court acted equitably in declining to grant the relief Dale requested.

## IV.    Dissipation of Assets

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013). Dale contends the district court should have awarded him $5872 "as a result of Teresa's dissipation of marital assets" through gambling. At trial, both parties conceded they gambled. And both conceded they had gambling winnings. While Dale contends Teresa spent more, he admitted he had no idea how often Teresa frequented gambling establishments. On our de novo review, we concur in the district court's finding that Teresa did not dissipate assets.

## V.    Appellate Attorney Fees

Teresa seeks $5297.50 in appellate attorney fees. An award rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Although Teresa prevailed, she conceded her income is about the same as Dale's. For that reason, we decline her request to have Dale pay her appellate attorney fees.

**AFFIRMED.**