**IN THE COURT OF APPEALS OF IOWA**

No. 23-0657
Filed July 3, 2024

**IN RE THE MARRIAGE OF KARA JO SHANNON**
**AND CHRISTOPHER PATRICK SHANNON**

**Upon the Petition of**
**KARA JO SHANNON,**
        Petitioner-Appellant,

**And Concerning**
**CHRISTOPHER PATRICK SHANNON,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Floyd County, Gregg R. Rosenbladt,

Judge.


        A petitioner appeals from the physical care, child support, and property-

division provisions of a marriage dissolution decree.  **AFFIRMED AS MODIFIED.**


        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellant.

        Rebecca A. Feiereisen of Trent Law Firm, PLC, Cedar Falls, for appellee.


        Considered by Schumacher, P.J., Langholz, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

Kara Shannon appeals from the decree dissolving her marriage with Christopher Shannon. She argues that the district court should have placed their children in her physical care rather than granting joint physical care to both parents. She alternatively contends that the split of parenting time set by the court should be considered placement in her physical care rather than joint physical care because she has care for four overnights while Chris has only three overnights. And so for either reason, she contends she should receive child support from Chris rather than owing it to him. Finally, Kara challenges the district court's property and debt division. She contends that the court incorrectly found that Chris has a personal loan from his mother, incorrectly valued his Discover-credit-card debt, and made an inequitable division when it assigned four debts totaling $21,760 to her without adjusting Chris's equalization payment.

On our de novo review, giving the district court's thoughtful decision due deference, we agree that awarding joint physical care serves the best interests of the children. And the joint-physical-care label is appropriate for the roughly equal parenting schedule here. So Kara's challenge to the child support calculation on that basis fails. We also agree with the district court's fact findings on the existence of the personal loan and the amount of the Discover-credit-card debt. But Kara is correct that property and debt division is inequitable given the parties' circumstances because it is unequal. We thus increase Chris's equalization payment to Kara by $5347.50 to a modified amount of $10,654.50. We decline to award appellate attorney fees to Chris.

## I.     Background Facts and Proceedings

Kara and Chris Shannon married in 2003.  They have four children, three of whom are still minors.[1]  Their children have been successful academically and active in extracurricular sports and music activities.  And both parents have played major roles in their children's lives, transporting them to school, taking them to appointments, volunteering as sports coaches, and attending their many events.

Kara works in education and obtained a master's degree in the field in 2013. She has flexible hours and her summers off, allowing her to spend much time caring for the children.  As of trial, her annual income was about $80,000.

Chris held different jobs during the parties' marriage, such as a marketing position with a newspaper and working for the Postal Service.  Shortly before trial he took a new job with a distribution center that requires him to work from 3:00 pm to 1:00 am, Saturday through Tuesday.  His income was about $50,000.

Kara and Chris separated in 2019 while living in Charles City.  Kara and the children moved out of the family home to another residence in Charles City.  She decided on the care schedule for the children—over Chris's objections seeking more parenting time—letting him visit one night a week and keep the children in his care on alternating weekends.

In the summer of 2021, Kara petitioned for dissolution of their marriage and moved with the children from Charles City to Readlyn.  Chris stayed in Charles City until their house sold in 2022.  Then he also moved to Readlyn, where he still resided at the time of trial.

---

[1] At the time of the decree, their oldest child was also still a minor.  But he is now an adult and no longer subject to the decree.

Kara sought to have their children placed in her physical care with visitation for Chris one weekday and every other weekend. On the other hand, Chris requested joint physical care. The parties also disputed the proper calculation of child support and the valuation and division of their assets and many debts.

After an October 2022 bench trial, the district court issued a decree dissolving the parties' marriage. The court awarded Kara and Chris joint legal custody and joint physical care of the children. It reasoned that the case presents "an ideal situation for shared physical care," explaining, "[t]he parenting skills are present. The experience with the children is present with each parent. The parents reside close to one another. The parents have sufficient communication skills and a sufficient concept of coparenting." The court thus concluded that the parties "should split parenting time with the children as evenly as possible," and to accommodate Chris's work schedule, set Chris's parenting time for Wednesday morning through Saturday midday, while Kara had the children the rest of the week. And given its joint-physical-care placement, the court calculated the parties' child-support obligation based on the offset method under Iowa Court Rule 9.14(3), ordering Kara to pay Chris child support in gradually decreasing amounts.

The court also divided the parties' marital assets and debts, attempting to ensure an equal balance between the parties. Because the court concluded that its division left Chris with a slightly greater value, it ordered Chris to pay Kara a $3307 equalization payment to balance the division. The court did not award spousal support or attorney fees to either party.

Both parties moved to amend or enlarge the decree's property division— among other provisions—under Iowa Rule of Civil Procedure 1.904(2). As relevant

here, Chris argued that the district court incorrectly divided his $15,000 share of the equity from the sale of their Charles City home when Kara had already received her $15,000 from the proceeds of that sale outside the property division. And he asked the court to award a $500 trailer to Kara—as she had testified during trial she would accept—and adjust their valuations accordingly.

Kara agreed with Chris on both those points. But she also argued that the court overlooked $21,760 of her credit-card debts and two of Chris's life insurance policies worth $4435 that were not included in the division. And she contended that one of Chris's credit-card debts in the division improperly included $4000 used to pay Chris's attorney fees that should be excluded. She thus contended that recalculating the division to account for these errors warranted an increased equalization payment to her. In response, Chris agreed to resolving each of those property-division issues as proposed by Kara, while contesting other parts of the motion that are no longer relevant on appeal.

The court granted the motions in part. It assigned the credit-card debts and the trailer to Kara but did not adjust the equalization payment to account for those changes in the division. It also recognized Chris's agreement to remove the $4000 in attorney fees from his assigned debt as requested by Kara and modified the order accordingly. The court did not address Kara's uncontested request to include Chris's life insurance policies in his asset valuation or Chris's uncontested request to correct the redundant division of his $15,000 in equity from the sale of their Charles City home.

Kara now appeals. And Chris seeks an award of appellate attorney fees.

## II.    Physical Care

Kara first challenges the district court's decision to place the children in the parties' joint physical care rather than in her physical care alone with only visitation for Chris.  She argues that the children's success academically and socially while mainly in her care during the three-year period of separation before the decree and the parties' difficulty communicating shows it is in the children's best interests to place them in her care permanently.

We review the district court's physical-care placement de novo.  *See In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 100 (Iowa 2007).  But a district court "is greatly helped in making a wise decision about the parties by listening to them and watching them in person," while we are limited to the cold, printed record and thus "denied the impression created by the demeanor of each and every witness."  *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up).  So we give weight to a district court's fact findings—especially those based on credibility determinations—even though they are not binding on us.  *See id.*; Iowa R. App. P. 6.904(3)(g).

Our overriding consideration is the best interests of the *children*, not the "perceived fairness to the *spouses*."  *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007); Iowa Code § 598.41(3) (2021).  The factors in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), guide us in discerning the best interests.  *See Fennelly*, 737 N.W.2d at 101.  And our goal "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity."  *Hansen*, 733 N.W.2d at 695.

Joint physical care is neither favored nor disfavored. *See id.* at 700. It may be awarded "upon the request of either parent" when the court awards joint legal custody. Iowa Code § 598.41(5). And the most important factors in considering whether it is in the children's best interests are often the "overriding interest in stability and continuity, the degree of communication and mutual respect, the degree of discord and conflict prior to dissolution, and the extent to which the parties agree on matters involving routine care." *Hansen*, 733 N.W.2d at 700.

Like the district court, we agree that joint physical care is in the children's best interests. The district court found both parents are very involved in their children's robust lives—sacrificing time and energy to actively participate and be present. We agree. Kara and Chris have strong parenting skills and have taken big roles in their kids' academic and extracurricular lives, guiding them along and pushing them to be well-rounded individuals. This was so for Chris even though Kara unilaterally limited the time the children could stay with him in his care overnight—and thus we give little weight to the informal parenting schedule used during their separation. Since each parent is a suitable physical custodian for the children, a stable continuation of them both having important roles in the caretaking is in the children's best interests. "[L]ong-term, successful, joint care is a significant factor in considering the viability of joint physical care after" dissolution. *Id.* at 697.

True, the parties' degree of conflict and their ability to communicate and show mutual respect weighs less strongly in favor of joint physical care. Both parties testified that their communication is challenging and at times strained. Chris prefers texting to phone calls to keep the conversation from divulging into insults. Kara rated the parties' communication abilities as low.

But the court found that their communication skills were improving as they transitioned from separated spouses to co-parents. And the district court applauded the parties for not spending "excessive time criticizing and attacking the other party" during the trial to make themselves appear better suited. "[T]ension between the parents is not alone sufficient to demonstrate [shared physical care] will not work." *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983). The parties' previous troubles in communication do not rise above the "usual acrimony that accompanies a divorce." *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985). We find the current communication and level of respect between the parties not to be a substantial impediment to shared physical care.

Finally, both parents appear to be on the same page as to parenting style. They participate in and encourage their children's wide-ranging extracurricular ventures. They worked together on school registrations and also both agreed to pursue medical care for a child.

In sum, we agree with the district court's assessment that the circumstances here present "an ideal situation for shared physical care." We thus affirm the district court's placement of the children in their joint physical care.

### III.     Child Support Calculation Based on Joint Physical Care

Kara next argues that the district court erred in calculating the parties' child-support obligations based on the offset method for cases involving joint physical care under Iowa Court Rule 9.14(3). She first contends that applying this rule was in error because the court should not have placed the children in the parties' joint physical care. But that argument fails because we have affirmed the joint-physical-care placement.

Kara also contends that the parties' physical-care arrangement is not really joint physical care—and "is actually one where Kara is awarded primary physical care of the children, subject to extraordinary visitation for Chris." True, the care schedule ordered by the court is not precisely equal—the children are generally in Kara's care four nights a week and Chris's three nights a week. But this matters not. While a joint-physical-care award should provide "roughly equal" time in each parent's care, "it does not require that residential arrangements be determined with mathematical precision." *In re Seay*, 746 N.W.2d 833, 835–36 (Iowa 2008) (cleaned up). The critical difference between an award of joint physical care to both parents and an award of physical care to one parent with visitation for the other is that "neither parent has physical care rights superior to those of the other parent." Iowa Code § 598.1(4); *see Seay*, 746 N.W.2d at 835–36 (noting that "joint physical care does require equal responsibility on routine, daily decision-making"). And so, when the court awards joint physical care, the court must apply the offset method for calculating child support under Iowa Court Rule 9.14, even if the parenting schedule is not precisely equal. *See Seay*, 746 N.W.2d at 836.

Here, there is no question from the text of the decree that the district court ordered joint physical care rather than awarding physical care to Kara and visitation to Chris.[2] *See In re Marriage of Brown*, 778 N.W.2d 47, 50–51 (Iowa Ct.

---

[2] The district court's decree—like many opinions and briefs—uses the term "shared physical care" rather than the statutory term "joint physical care." *See* Iowa Code §§ 598.1(4), .41(5). But the terms are often used synonymously—as the district court's analysis makes clear it did here. *See In re Marriage of Ferguson*, No. 21-0952, 2022 WL 1486508, at *2 n.1 (Iowa Ct. App. May 11, 2022); *In re Marriage of Diercks*, No. 21-0869, 2022 WL 951047, at *1 n.2 (Iowa Ct. App. Mar. 30, 2022).

App. 2009). And the care schedule is roughly equal even though not precisely so. Thus, the court did not err in applying Iowa Court Rule 9.14(3)—indeed it was required to do so. *See* Iowa Ct. R. 9.14(3) ("In cases of court-ordered joint (equally shared) physical care, child support shall be calculated as shown below in the Joint (Equally Shared) Physical Care Method of Child Support Computation grid."); *Seay*, 746 N.W.2d at 836. Kara has not argued—on appeal or in the district court— for a departure from the guideline calculation. *See Seay*, 746 N.W.2d at 836 (explaining that guideline calculation "is presumptively valid but may be varied if the district court makes written findings that application of the guidelines would be unjust or inappropriate"). And so, we affirm the district court's child-support award.

### IV. Division of Property and Debt

Kara's final three challenges to the decree are all to the court's division of the marital property and debts. In a dissolution decree, "[t]he court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5); *see also In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006) ("Iowa is an equitable distribution state."). This division must include the marital debts as well. *See Sullins*, 715 N.W.2d at 251. A court must decide what is equitable "in light of the particular circumstances of the parties" and considering the factors in Iowa Code section 598.21(5). *Sullins*, 715 N.W.2d at 247 (cleaned up). While an equal division is not always required, "it is generally recognized that equality is often most equitable." *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013) (cleaned up).

As with the other aspects of the dissolution decree, we review the property division de novo. But we will only modify the district court's division on appeal "when there has been a failure to do equity." *Id.* at 698 (cleaned up). And "[o]rdinarily, a trial court's valuation" of marriage property "will not be disturbed when it is within the range of permissible evidence," especially "when valuations are accompanied by supporting credibility findings or corroborating evidence." *Hansen*, 733 N.W.2d at 703.

Kara first argues that the evidence does not support the district court's finding that Chris has a $15,000 personal loan from his mother. And true, Chris presented no documentary evidence supporting the existence of this loan, did not call his mother to testify, and testified that the amount of the loan was higher than the amounts he first included on his affidavit of financial status or the pretrial stipulation.[3] But the district court believed Chris about the loan's existence and valued it at the lowest of the three claimed amounts. This is precisely the sort of factfinding and credibility determination to which we defer even on our de novo appellate review. *See id.* Chris testified, including under probing cross-examination, about the loan's existence and value. The district court relied on this. And based on our review of the evidentiary record, we see no reason to disturb the court's findings on the existence or amount of this marital debt.

---

[3] In the parties' pretrial stipulation describing agreed and contested issues, Chris listed the loan amount as $15,000 (and Kara disclaimed any knowledge of the debt). In his affidavit of financial status, he claimed $19,000. And in his trial testimony, he said it had increased to $25,000 due to additional expenses supporting the children and paying the parties' mortgages. Chris does not cross-appeal the district court's decision to value the loan at a lower amount.

Kara also challenges the district court's valuation of Chris's Discover-credit-card debt. She contends that its value should be reduced by $4500 because the district court relied on Chris's trial testimony that his balance was $25,000 despite a credit-card statement from eleven months before showing that the credit limit on that card was only $20,500. But given the deference we give the district court's factual findings and credibility determinations, we see no reason to disturb this valuation either.

Chris was repeatedly questioned by both his counsel and Kara's about the amount of this debt and confirmed that it was $25,000 and that he was "at the limit" on that card. On cross-examination, Kara's counsel even questioned Chris directly about the credit-card statement, asking him whether his balance had really increased from the balance listed there—roughly $18,000—to $25,000. Yet the counsel did not ask about the credit limit—perhaps because he feared that rather than impeaching Chris it would give Chris the chance to clarify that the credit limit had increased sometime in those eleven months. In light of the district court's conclusion that Chris's testimony was credible, it is reasonable to infer that the credit limit did increase even without testimony from Chris that it did. The evidence shows that both parties had to increase their debts because of the financial challenges of their separation, the credit card was already nearly maxed out eleven months before the testimony, and a $4500 credit-limit increase would likely not be difficult to obtain. We thus reject Kara's challenge to the district court's valuation of the Discover-credit-card debt.

Finally, Kara argues that the district court failed to equitably divide the marital property and debts because in its post-trial-1.904 ruling, it assigned four

additional marital debts totaling $21,760 to her without adjusting Chris's equalization payment. She thus contends that the total division of property and debts was unequal and inequitable. Chris defends the district court's division by contending essentially that it was close enough given the amount in dispute and the total property division and by suggesting that Kara consented to take on the debts in the pretrial stipulation.

We agree with Kara that she did not consent to the district court's unequal division in the pretrial stipulation, which stated "[t]he parties *cannot agree* as to a division of assets" or "on the payment of their liabilities." She only proposed taking on the credit-card debts as a part of a division equal overall. We also agree that on these facts, only an equal division of the parties' property and debts is equitable. *See Kimbro*, 826 N.W.2d at 704. And Kara is correct that the district court's reasoning in the original decree shows that it was also trying to divide all the property and debts that it addressed equally between the parties. But the division became lopsided—and thus inequitable given the parties' circumstances—when the court assigned $21,760 more in marital debts to Kara. Indeed, Chris did not dispute Kara's request in her 1.904 motion to adjust the property distribution to account for these debts—"acknowledg[ing] the debts as [Kara] outlined and her resolution of this issue." So some modification of the property distribution and the resulting equalization payment from Chris to Kara is warranted to do equity.

Yet we cannot agree with Kara that increasing Chris's equalization payment by $10,880 would be equitable. Such a division would still be unequal—and thus inequitable here—just with the inequity falling on Chris rather than Kara. Both parties agreed in their dueling 1.904 motions that the district court incorrectly split

Chris's $15,000 share of the equity from the sale of their Charles City home when the proceeds of that sale had already been divided between them, resulting in an imbalance of $7500 in Kara's favor. They agreed that the $500 trailer should be awarded to Kara rather than Chris, resulting in another $250 imbalance in her favor. And they agreed that the court had left out the division of Chris's two life insurance policies worth a total of $4435, resulting in an imbalance of $2217.50 in his favor. Netting out all these amounts shows an imbalance of $5347.50 in Chris's favor in the division of assets and debts.[4]

The equalization payment owed by Chris to Kara in the original decree was $3307. Accounting for the reduction in Chris's credit-card debt by $4000 to remove his payment for attorney fees made by the district court in its 1.904 ruling increases his equalization payment to $5307. Adjusting for the total imbalances from Kara's credit card debts, the double-counted equity, and Chris's life insurance policies increases his payment another $5347.50 to $10,654.50. We find that the property division ordered by the district court with a modified equalization payment from Chris to Kara of $10,654.50 is an equitable distribution given the parties' circumstances. And so we affirm the district court's property division with this modification.

---

[4] We recognize that Chris focused his arguments on appeal entirely on defending the district court's property division. And unfortunately, he thus did not make an alternative argument proposing how the division should be recalculated if we disagreed with him and held—as we are—that the property division should be equal. But given the requirement that the decree do equity and our acceptance of Kara's argument that only an equal division is equitable here, we cannot ignore the parties' concessions in their 1.904 motions and responses and blindly accept Kara's proposed division.

**V.     Appellate Attorney Fees**

Chris asks for an award of his appellate attorney fees.  In dissolution cases, appellate attorney fees are not awarded as "a matter of right, but rather rest in [our] discretion."  *Sullins*, 715 N.W.2d at 255 (cleaned up).  In exercising that discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *Id.* (cleaned up).  We exercise our discretion to deny Chris's request for appellate attorney fees.  Considering the relative financial circumstances of the parties and Kara's partial success on the merits, it is appropriate for each party to pay their own attorney fees as they did in the district court.  Costs shall be assessed to Kara.

**AFFIRMED AS MODIFIED.**